Pesante Martínez, Juez Ponente
*607 TEXTO COMPLETO DE LA SENTENCIA
Mediante el presente escrito de apelación, Luis Ramón Quiñones Ortiz, nos solicitó la revocación de la sentencia emitida por el Tribunal de Primera Instancia, Sala de Humacao, en la cual se le concedió la custodia del menor, Luis Raúl Quiñones Santiago, a la apelada, Lourdes Santiago Santiago.
Por los fundamentos que habremos de exponer, revocamos la sentencia apelada.
I
El 6 de diciembre de 1996, la Sra. Lourdes Santiago Santiago presentó una demanda de divorcio (HD196-0486) contra su esposo, Luis Ramón Quiñones Ortiz, bajo la causal de trato cruel. Solicitó hogar seguro para ella y sus tres hijos menores. El demandado contestó la demanda aduciendo que la alegada conducta adulterina de la demandante provocó la ruptura del matrimonio, ello sin presentar reconvención alguna. A su vez, solicitó la custodia y patria potestad de los tres hijos menores habidos en el matrimonio.
Posteriormente, el señor Quiñones Ortiz presentó una demanda de divorcio contra su esposa, por la causal de adulterio y trato cruel. (HDI96-0506). En esta ocasión, el demandante reiteró su solicitud de patria potestad y custodia de sus tres hijos, menores de edad. Luego, presentó otro pleito exclusivamente sobre custodia (HCU96-0046). En el mismo, reclamó la custodia legal provisional de los dos (2) hijos bajo su custodia física, Luis Ramón Santiago y Lourdes Charline Quiñones Santiago, como también, la del menor de tres (3) años y medio, Luis Raúl Quiñones Santiago, quien estaba bajo la custodia física de la señora Lourdes Santiago.
Al contestar la demanda presentada en su contra, el señor Quiñones Ortiz solicitó que se consolidaran los tres (3) casos. La señora Santiago se opuso a la consolidación, alegando que el tribunal no había adquirido jurisdicción sobre su persona. El tribunal autorizó la consolidación.
Luego de varios incidentes procesales, se señaló vista para la determinación sobre la custodia permanente de los tres (3) hijos menores. La vista se celebró el 22 de octubre de 1997. Durante la referida vista, las partes acordaron que la única controversia a dilucidarse era la custodia del hijo más pequeño, a saber, Luis Raúl Quiñones de tres (3) años. Las partes acordaron que los otros dos hijos permanecerían bajo la custodia del padre apelante.
En la vista testificaron a favor de la parte demandada, la propia señora Lourdes Santiago Santiago; su señora madre, Juanita Santiago; el señor Oscar Hernández Lozada, Trabajador Social del Programa Head Start de Yabucoa; y la señora Mabel Medina Hernández, maestra del Programa Head Start de Yabucoa. Por la parte del demandante, testificó el propio señor Quiñones Ortiz; el doctor Miguel A. Rivera Cuadrado, Psicólogo Clínico; y una vecina.
Surge del expediente ante nuestra consideración que las partes del epígrafe contrajeron matrimonio el 17 de junio de 1978 y procrearon tres hijos, todos de apellidos Quiñones Santiago y de nombres, Luis Ramón, Lourdes Charline y Luis Raúl.
*608 Adquirieron una casa donde actualmente reside el señor Quiñones Ortiz con dos de sus hijos, a saber, Luis Ramón y Lourdes Charline. La señora Santiago Santiago abandonó su hogar el 3 de diciembre de 1996. Desde entonces ella y el hijo menor de la pareja viven fuera de la residencia.
La señora Santiago trabajaba en la oficina del Departamento de la Vivienda (“Vivienda”) en el pueblo de Yabucoa y el menor estaba matriculado en el Head Start del mismo pueblo. Por invitación de la señora Milagros Ortiz, quien cuidaba al menor desde que éste nació, la señora Santiago decidió vivir con su hijo en el hogar de dicha familia en Yabucoa.
Al no tener familiares en el municipio de Yabucoa y ante su precaria situación económica que no le permitía alquilar una vivienda adecuada, la señora Santiago se vio obligada a marcharse de dicho municipio llevando consigo a su hijo menor.
Vivienda cerró sus oficinas en Yabucoa. La señora Santiago solicitó un traslado para las oficinas de dicha agencia en Ponce. Ello debido a que era cerca del pueblo de Juana Díaz, de donde es oriunda y residían sus familiares.
Al momento en que se celebró la vista, la apelada no tenía casa propia, sino que residía con su señora madre. Convivían allí por lo menos ocho (8) personas, acomodadas en cuatro (4) habitaciones que tiene la casa. La referida residencia no se había terminado de construir. Del expediente ante nuestra consideración no surge información que nos provea elementos de juicio para evaluar la unión familiar existente entre estas ocho (8) personas y cómo ello afecta o beneficia al menor.
Para llegar a la casa, es necesario pedir autorización debido a que existen dos vías de acceso y ambas atraviesan fincas privadas. No es posible llegar a la residencia en un vehículo. La carretera que conduce hasta el lugar donde reside la apelada no está completada. Sólo es posible acercarse en un vehículo hasta cierta distancia cerca de la casa. El resto del camino hasta llegar a la casa, se recorre a pie. En dicho hogar no hay facilidades sanitarias ni servicio de energía eléctrica. Normalmente, no hay agua en la residencia. Estaban en gestiones de terminar la construcción de un pozo muro. Al momento, existía y utilizaban una letrina. La luz que tenían en el hogar provenía de sus vecinos, quienes le brindaban el servicio de luz mediante extensiones entre ambas residencias.
En la casa del apelante, padre del menor cuya custodia es objeto de este recurso, sólo viven el apelante y sus dos hijos adolescentes, hermanos del menor. Existen todos los servicios básicos necesarios para residir en el hogar. Eran estas personas las que cuidaban del menor mientras la madre, aquí apelada, trabajaba y cursaba estudios nocturnos.
A la fecha de la vista, el menor estaba pendiente de matricularse en el Head Start de Juana Díaz. La apelada hizo arreglos con sus familiares para recoger al menor en el Head Start y para su cuido, mientras ella trabajaba.
El Tribunal de Primera Instancia recibió prueba conflictiva. Ambas partes presentaron prueba en apoyo a sus respectivas posiciones.
Los testigos presentados en apoyo a la madre coincidieron en la relación estrecha y afectiva que existía entre el menor y la madre, la buena apariencia del menor, las inquietudes de la madre en el desarrollo emocional y físico del niño y las visitas de ésta al centro de cuido.
*609 En apoyo del padre, el Dr. Miguel A. Rivera Cuadrado, Psicólogo Clínico, testificó extensamente en tomo a la necesidad y conveniencia de que los tres (3) hijos del matrimonio permanecieran físicamente unidos. Abundó en que tanto Luis Ramón como Lourdes Charline, los dos hijos mayores, serían más felices si tuvieran la compañía del hermano menor para prodigarle afecto, cariño y cuidados. Testificó, además, que la ausencia del hijo menor y la madre del núcleo familiar, afectaba a los hijos adolescentes.
De las evaluaciones psicológicas realizadas por el Dr. Hugo Román, Psicólogo Clínico, se desprendió en términos generales, la recomendación de expandir las redes de apoyo y sostén familiar.
Conforme a las evaluaciones psiquiátricas realizadas por el Dr. Jaime Acevedo Maldonado, Psiquiatra, éste recomendó que los hijos del matrimonio, principalmente los dos adolescentes, estuvieren bajo la custodia del padre y se estimó que el menor, Luis Raúl no se debería separar de sus hermanos mayores. La evaluación psiquiátrica recogió el convencimiento del señor Quiñones Ortiz sobre las relaciones que su esposa sostuvo con una persona del sexo opuesto. Se destacó el apego emocional que tiene el menor con su madre, el cual no se estimó lesivo, ni patológico para el crecimiento y desarrollo emocional del niño.
El Informe Social preparado por la señora Luz D. Casanova, Trabajadora Social del Programa de Relaciones de Familia del Tribunal, respecto a la solicitud de custodia de los menores, presentó un cuadro completo de antecedentes del caso, de la situación familiar conforme lo expresara la señora Lourdes Santiago, el señor Luis Ramón Quiñones Ortiz, el menor Luis Ramón Quiñones Santiago, la menor Lourdes Charline Quiñones Santiago y sus observaciones del menor Luis Raúl Quiñones Santiago, así como de las visitas realizadas a los hogares actuales de las partes y entrevistas colaterales. Se destacaron las recomendaciones contenidas en las evaluaciones psicológicas y psiquiátricas realizadas a las partes y a todos los menores. De igual manera, el informe recogió el resultado de la investigación ante el Departamento de Familia de Yabucoa en cuanto a un alegado maltrato al menor más pequeño, el cual arrojó que no se corroboró maltrato o negligencia alguna. Además, la Trabajadora Social entrevistó a los vecinos de las partes, en sus respectivas comunidades.
Surge del informe que la señora Santiago devenga un salario de $414.00 mensuales, mientras que el señor Quiñones Ortiz devenga unos $614.00 mensuales.
La Trabajadora Social del Programa de Relaciones de Familia del Tribunal recomendó que el menor Luis Raúl permaneciera con su madre, pero que se continuaran las relaciones patemo-filiales como fueron provisionalmente establecidas, las cuales fueron calificadas como saludables, necesarias y adecuadas.
Conforme a la prueba aquilatada por el tribunal sentenciador, se le concedió la custodia legal permanente del hijo menor, Luis Raúl Quiñones Santiago, a la madre, señora Lourdes Santiago. A tal determinación se llegó, luego que el Tribunal considerara que tanto el padre como la madre se encontraban en igualdad de condiciones, por lo que procedía, en ausencia de otros criterios, preferir a la madre para la otorgación de la custodia. La patria potestad sería compartida entre la señora Santiago y el señor Quiñones, pudiendo éstos ejercerla de manera independiente. Las relaciones patemo-filiales se establecieron en forma permanente, en fines de semana altemos desde las 9:00 AM del sábado hasta las 5:00 PM del domingo. Se estableció que se recogería y entregaría el menor en el Me Donald's del Centro Comercial de Guayama.
La custodia legal permanente de los otros menores se le concedió al padre de éstos, señor Luis Ramón Quiñones Ortiz. La patria potestad, al igual que con el menor Luis Raúl, sería compartida entre ambos padres. Se dejaron abiertas la relaciones matemo-filiales respecto a los dos hijos adolescentes habidos en el matrimonio.
*610 Insatisfecho con la anterior determinación, el apelante presentó ante nos el recurso de epígrafe. Se revoca la sentencia apelada.
II
La adjudicación de la cuestión planteada requiere un breve examen del concepto de custodia según recogido por el Código Civil de Puerto Rico, 31 L.P.R.A. β 383, y la jurisprudencia del Tribunal Supremo de Puerto Rico. Todo intento de definir un concepto “entraña dificultades y atrae peligros” pues “[djefinir obliga a limitar”. J.M. Castán Vázquez, La Patria Potestad, Madrid, Ed. Rev. Der. Privado, 1.960, pág. 9.
El Artículo 107 del Código Civil, 31 L.P.R.A. β 383, establece que,:

“En todos los casos de divorcio, los hijos menores serán puestos bajo el cuidado y la patria potestad del cónyuge que el Tribunal, en el ejercicio de su sana discreción, considere que los mejores intereses y bienestar del menor quedarán mejor servidos; pero el otro cónyuge tendrá derecho a continuar las relaciones de familia con sus hijos, en la manera y extensión que acuerde el Tribunal al dictar sentencia de divorcio, según los casos. ”

En su perspectiva histórica, el estatuto simplemente reitera o incorpora la norma judicial predicada en la máxima del poder de parens patriae basada, entre otros, en el caso de Rodríguez v. Gerena, 75 D.P.R. 900 (1954):
“[El Art. 107 del Código Civil] no destruye o restringe el poder de los tribunales para adoptar las medidas necesarias en cuanto a la custodia de los hijos menores, con elfin de lograr y proteger su bienestar y sus mejores intereses.... No obstante tales disposiciones, una corte de justicia, en el ejercicio del poder de parens patriae, tiene autoridad para darle la custodia de tales hijos a la parte perdidosa en acción de divorcio, si se le demuestra que es ésa la medida más conveniente para ellos. Dichas disposiciones expresan una norma general, que está subordinada a la regla de que la consideración primordial es el superior interés público del bienestar de los hijos, de “mucha más importancia que cualquier derecho correlativo” a la custodia... (Citas Omitidas).
En Torres, Ex Parte, 118 D.P.R. 469, 477 (1987), el Tribunal Supremo definió custodia como la “tenencia o control físico que tiene un progenitor sobre sus hijos”. La custodia no debe ser vista como un elemento aparte de la patria potestad, sino como un componente de la misma, pues ésta impone a los padres el deber primario de tener a sus hijos menores en su compañía.
En relación con la custodia de un menor, los tribunales deberán guiarse siempre por el bienestar y los mejores intereses de dicho menor, tomando en consideración, entre otros, factores como: la edad del menor, su sexo, salud mental y física, preferencia, habilidad de las partes para satisfacer las necesidades afectivas, económicas y morales del menor y la interrelación del mismo con los padres. Sánchez Cruz v. Torres Figueroa, 123 D.P.R. 418 (1989); Marrero Reyes v. García Ramírez, 105 D.P.R. 90 (1976). Tal regla no choca necesariamente con una preferencia básicamente a favor de la madre cuando los progenitores se encuentran en igualdad de condiciones. Nudelman v. Ferrer Bolívar, 107 D.P.R. 495 (1978).
La norma de favorecer a la madre sobre el padre en casos de custodia de menores, en igualdad de condiciones, nace de la propia doctrina de bienestar del menor. Ortiz v. Vega, 107 D.P.R. 831 (1978). Examinados y considerados por un tribunal todos los factores en relación al bienestar de un menor, si la madre se encuentra esencialmente en la misma posición que los demás -incluyendo al padre- en ausencia de otras circunstancias excepcionales que justifiquen lo contrario, el tribunal debe adjudicar la custodia del menor á la *611 madre. Nudelman v. Ferrer Bolívar, supra.
La norma surgió como respuesta a una realidad social dada en dicha época. La historia sitúa a la mujer de esa época como ama de casa y madre abnegada. Eran relativamente escasos los casos en los cuales la mujer trabajara fuera de la casa. Era el hombre quien salía del hogar a trabajar para proveer el sustento de su familia.
Advertimos, sin embargo, que dichos factores han cambiado dramáticamente desde entonces. Hoy día, nuestro entorno social es ostensiblemente distinto. Lo anterior puede dar base a reexaminar la doctrina. Véase, González Tejera, Efraín, Bienestar del Menor: Señalamientos en Torno a la Patria Potestad, Custodia y Adopción, Revista Jurídica de la Universidad de Puerto Rico, Sum. 1985, 54, n3, págs. 409-494.
Aunque reconocemos que el factor social cultural es uno determinante en estos casos, la realidad es que no podemos desvincularlo o verlo como un ente separado de la realidad jurídica. Nuestro estado'de derecho necesariamente nos exige que en casos de custodia se enfoquen todos nuestros esfuerzos hacia los mejores intereses del menor y velar por su bienestar. Ello no se consigue con el sólo hecho de concederle a la madre la custodia del menor. Por el contrario, cada situación debe evaluarse cuidadosamente, por separado, atendiendo las circunstancias particulares de cada caso.
En el caso de marras, al analizar la prueba en su totalidad, nos vemos forzados a concluir, contrario a lo concluido por el tribunal a quo, que las partes no están en igualdad de condiciones, por lo que la doctrina de preferir a la madre no es de aplicación.
Con respecto a las viviendas de las respectivas partes, tenemos que concluir que la parte apelante definitivamente puede ofrecerle a su hijo menor un hogar con mayor seguridad, donde mejor se le satisfagan sus necesidades tanto materiales como afectivas.
En lo referente al ambiente familiar, igual conclusión se impone. No albergamos dudas de que el padre y los hermanos del menor están capacitados para atenderlo y suministrarle los cuidados necesarios. Es un hecho indisputado que lo hicieron antes. Si quedó disuelto el vínculo matrimonial, no hay razón válida que nos mueva a romper el vínculo con su padre y hermanos. Ellos constituyen el grueso de su familia.
En la fecha en que se celebró la vista, el menor Luis Raúl no estaba matriculado aún en el Head Start de Juana Díaz. La apelada todavía estaba haciendo las gestiones pertinentes para matricularlo.
De otra parte, el hogar del padre apelante queda bien cerca de la escuela donde el menor le correspondería asistir y no hay ningún impedimento para que éste pueda matricularse y asistir a dicho plantel.
Conforme a los hechos que surgen del expediente, el niño se quejó con su padre, el apelante, de picor en una parte de su cuerpo. Luego de llevarlo al médico y de realizarse los exámenes pertinentes, resultó que el menor padecía de un hongo que surge como consecuencia de falta de higiene.
En el aspecto económico, la parte apelante devenga un sueldo de $614.06 mensuales, la apelada devenga doscientos dólares menos, es decir, devenga un salario de $414.00 mensuales. 
Por último, luego de examinada la prueba pericial, observamos que todos los peritos, con excepción de la Trabajadora Social, concluyeron que el separarlo de sus hermanos iría en detrimento de la salud física y emocional del menor. Advertimos que la relación entre el menor, su padre y hermanos es una saludable, adecuada y necesaria. No vemos razón válida que nos lleve a desvincularlo de su familia inmediata. Analizada *612 la prueba, llegamos al resultado de que al menor le sería favorable permanecer al lado de sus hermanos.
Reconocemos la sabia norma que nos mueve a abstenemos de intervenir con las determinaciones de hechos y con la apreciación de la pmeba que hacen los tribunales de primera instancia, excepción hecha en los casos en que se demuestre que se actuó con pasión, prejuicio, parcialidad o que se incurrió en error manifiesto. López Vicil v. ITT Intermedia, Inc., _ D.P.R. _ (1997), 97 J.T.S. 42, Opinión de 4 de abril de 1997; Quiñones López v. Manzano Pozas, _ D.P.R. _ (1996), 96 J.T.S. 95, Opinión de 25 de junio de 1996.
La regla de abstención y deferencia obedece a que ante ellos fue que declararon los testigos y fueron ellos quienes tuvieron la oportunidad de verlos y oirlos declarar. No obstante, “[e]l arbitrio del juzgador de los hechos es respetable, mas no absoluto. Una apreciación errónea de la prueba no tiene credenciales de inmunidad frente a la función revisora de este Tribunal”. Viuda de Morales v. De Jesús Toro, 107 D.P.R. 826, (1978). Véase además, Ramos Acosta v. Caparra Dairy, Inc., 113 D.P.R. 357 (1982); Vélez v. Srio. de Justicia, 115 D.P.R. 533 (1984).
Es menester recordar que lo anterior no es de aplicación en circunstancias en que la evidencia consista de pmeba pericial, de documentos públicos o privados, de deposiciones, estipulaciones escritas u orales, de hechos aceptados o de hechos incontrovertidos por las alegaciones o la pmeba. Sanabria v. Sucn. González, 82 D.P.R. 885 (1965). Ante esta pmeba, los tribunales apelativos estamos en igual posición que los tribunales de instancia; no estamos obligados a aceptar la interpretación por ellos dada ni a aplicar la norma de abstención expuesta.
Tomando como norte las disposiciones legales y la jurisprudencia antes reseñada, el balance más racional y justiciero apunta a que la custodia del menor debe otorgársele al apelante.
Por todo lo anterior, entendemos que el mejor bienestar del menor se encuentra al lado de su padre y sus hermanos. Este núcleo le ofrecerá mayor estabilidad emocional al menor. Quedó demostrado que el apelante puede proveerle los cuidados necesarios al menor. Dada su tierna edad, el ambiente en que se desarrolle el menor es de vital importancia para los años venideros.
Por tanto, revocamos la sentencia apelada, y le concedemos la custodia del menor Luis Raúl al señor Quiñones Ortiz. Devolvemos el caso al Tribunal de Instancia para que, conforme a lo aquí resuelto, se establezcan las relaciones matemo-filiales según se estimen apropiadas.
Lo acordó el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General
ESCOLIO 99 DTA 7
1. No por ello estamos insinuando que la capacidad económica del padre o de la madre sea un factor determinante cuando se está evaluando un caso de custodia. No obstante, es un factor a tomar en consideración al evaluar si el padre o la madre están en condiciones para proveerle al menor aquello que le sea necesario.