TEXTO COMPLETO DE LA SENTENCIA
La apelante, Autoridad de Carreteras y Transportación (Autoridad), nos solicita que revoquemos la sentencia emitida por el Tribunal de Primera Instancia, Sala de Expropiaciones, el 9 de marzo de 2000 y notificada el día 16 de ese mes. En la misma, el referido foro sentenciador ordenó a la Autoridad que permitiera acceso directo desde la carretera #203 a dos (2) remanentes de terreno pertenecientes a la parte con interés apelada que así resultaron, luego de haber sido expropiada parte de la finca principal. Exigió remover las vallas de seguridad instaladas alrededor de dicha área que impide el acceso a ambos remanentes desde dicha carretera. Por los fundamentos que exponemos, revocamos el dictamen apelado.
Una síntesis de los hechos medulares que dan lugar a esta controversia, refleja lo siguiente. El presente litigio comenzó con la presentación de una petición de expropiación forzosa por parte de la Autoridad. Solicitó dicha agencia que se ordenase la expropiación de 38,010.089 metros cuadrados de terreno equivalentes a 9.6708 cuerdas de una finca ubicada en el Barrio Quebrada de San Lorenzo, Puerto Rico, propiedad de la parte apelada, Colón Dieppa and Colón Parrilla, Inc., con el propósito de construir un puente en la carretera #203 que conduce desde la #30 hasta las afueras de San Lorenzo. Dicho terreno sería segregado de una finca de mayor cabida perteneciente a la misma dueña dedicada a vaquería.
Lo referente al valor de las fincas expropiadas y lo que comprendería la justa compensación a pagar por la Autoridad, culminó con una estipulación transaccional que fue acogida por el tribunal de instancia en sentencia de 25 de agosto de 1998. Según lo alega la apelada, las partes solicitaron al tribunal que retuviera jurisdicción sobre el caso para discutir lo referente a un supuesto acuerdo verbal llevado a cabo con un ingeniero de la Autoridad relacionado con el acceso a los remanentes.
Así las cosas, luego de adjudicada la justa compensación de la parcela expropiada, la parte apelada compareció en autos. Adujo que por motivo de la expropiación, su finca se había dividido en dos remanentes (este y oeste), uno de los cuales, el oeste, quedó enclavado como resultado. Señaló que, originalmente, la Autoridad contempló la carretera como una sin control de acceso y que se comprometió a construir un paso de ganado por debajo del puente, según quedó reflejado en los planos originales. Añadió que aunque luego se modificó el diseño del plano original eliminándose el paso de ganado contemplado, mediante convenio verbal sostenido con el ingeniero David Montañez, Director del Area de Infraestructura de la Autoridad, la agencia se comprometió a proveer accesos a ambos remanentes de la finca expropiada hacia la carretera #203. Agregó que, *1123 a esos fines, se acordó que la Autoridad permitiría acceso vehicular desde ambos remanentes a dicha carretera.
Sostuvo, asimismo, que una vez culminada la constmcción de la carretera, la Autoridad incumplió el acuerdo, procediendo a instalar unas vallas de seguridad a lo largo del remanente oeste impidiéndole el acceso a la carretera recién construida, aunque no así por el lado este. Expresó, también, que dichas vallas no formaban parte del proyecto según fuera concebido inicialmente por la Autoridad. Solicitó que se celebrase una inspección ocular y se ordenase su remoción.
El foro de instancia atendió el pedido de la parte apelada. Ante sus alegaciones, ordenó a la Autoridad que expresara razones por las cuales se "varió el plano y se instó la valla no reflejada en el plano."
En cumplimiento, la Autoridad compareció. Expuso que luego del diseño original "se encontró que había gran proliferación de accesos que constituían un problema de seguridad para el trámite en la nueva carretera, [razón] por [la cual] se cambió el concepto del proyecto a uno de acceso controlado, por lo que se eliminaron todos los accesos propuestos." Añadió que "los accesos de los remanentes enclavados se dar[ían] a través de marginales, puentes y servidumbre, según sea el caso."
Celebrada una inspección ocular, el tribunal apelado concluyó que el remanente de la finca principal de la apelada quedó enclavado. Requirió a la Autoridad que informase el "acceso que se [le] va a proveer." La parte apelada sometió una réplica a la comparecencia de la Autoridad antes señalada. Insistió en el acuerdo con el ingeniero Montañez. Aludió a que el remanente oeste de la finca principal "quedó enclavado". Cuestionó la determinación de la Autoridad en cuanto a que los accesos constituían un problema de seguridad. Expuso que las vallas fueron colocadas de forma arbitraria y caprichosa, ya que se había concedido acceso a remanentes de otras fincas y en algunos lugares no las había.
Atendido dicho escrito, el tribunal le concedió tiempo a la Autoridad para que informara cómo iba a proveer los accesos a los remanentes de la parte apelada. Aunque tarde -nueve (9) meses después-, la Autoridad cumplió con la orden emitida, luego de celebrada la vista ocular relativa al aludido acceso. Sometió copia de un plano, el cual refleja una servidumbre que se comprometía a constituir, la cual permitiría el acceso del remanente enclavado oeste al remanente este de la finca principal y viceversa. Conforme el mismo, figura una servidumbre de 308.6502 m/c que cruza por debajo del puente construido sobre la parcela expropiada.
Celebrada una conferencia relativa al estado de los procedimientos, la representación legal de la Autoridad no compareció. El tribunal procedió, entonces, a señalar vista para adjudicar lo referente al acceso planteado. La orden emitida a esos fines incluida en la minuta preparada, provocó que al ser notificada la Autoridad, solicitase que se corrigiese la misma. Destacó que en la vista señalada, la controversia a discutirse debería girar en tomo a la constitución de la servidumbre, por cuanto no existía una sobre acceso, ya que la finca de la parte apelada "continuaba con su acceso original". De los autos no surge que dicha petición fuera atendida por el foro de instancia.
Luego de celebrada la vista, las partes sometieron memorandos en apoyo de sus respectivas posiciones. La Autoridad atacó la facultad del ingeniero Montañez para acordar con la apelada los accesos a su finca. Esta última, en el suyo, se reafirmó en el acuerdo sostenido. Solicitó que la Autoridad proveyera acceso a los dos remanentes.
El foro de instancia resolvió. Ordenó a la Autoridad permitir el acceso directo a ambos remanentes desde la carretera #203, así como remover las vallas de seguridad instaladas. Una moción de determinaciones de hechos y conclusiones de derecho adicionales fue denegada. Inconforme, la Autoridad recurre ante este Foro. Plantea la comisión de dos errores. Primero, levanta que incidió el tribunal sentenciador al ordenar el acceso directo de la carretera #203 a las fincas remanentes y que removiera las vallas de seguridad instaladas en ambos extremos del puente constmido. Segundo, le imputa a dicho foro haber cometido error al determinar que a lo largo de dicha *1124 carretera existen otros dos remanentes de fincas con acceso, y concluir que se trata de una actuación arbitraria y caprichosa de la Autoridad el no permitirle a la parte con interés, el suyo. Resolvemos que el primer error apuntado se cometió. Ello así conlleva la revocación de la sentencia apelada.
Aunque el derecho a la propiedad privada es uno de los pilares sobre los cuales descansa nuestro sistema, el mismo no es absoluto. El Estado puede interferir, de ser necesario, incluso para negar ciertas formas de su uso a los fines de proteger la salud, seguridad y el bienestar general de los ciudadanos. Vélez Reboyras y Otros v. Secretario de Justicia, 115 D.P.R. 533 (1984), pág. 540. Consiguientemente, existe la facultad de expropiar la propiedad privada con el propósito de dedicarla a un uso público. Ese poder de expropiación es inherente a su soberanía. Esta facultad, empero, está limitada al pago de una justa compensación; que la cosa sea destinada para un fin público; y que se siga el procedimiento establecido por la ley. 31 L.P.R.A. see. 1113; López v. Autoridad de Energía Eléctrica, 2000 J.T.S. 126, a la pág. 1573.
De otra parte, relacionado con el derecho de acceso de una propiedad privada a una vía pública, se ha resuelto que éste no es absoluto. El mismo está sujeto al ejercicio razonable de la facultad del Estado para reglamentar el uso de las carreteras y velar por la seguridad del tráfico vehicular en beneficio del bien común. Texaco v. Srio. de Obras Públicas, 85 D.P.R. 712, (1962). Se trata éste de un derecho subordinado al poder público del Estado sometido a la seguridad y bienestar del público en general. Texaco, supra, pág. 722; E.L.A. v. Rodríguez, 103 D.P.R. 626 (12975). La reclasificación de una carretera para limitarle accesos desde propiedades privadas cae, pues, dentro del poder público del Estado, Texaco, supra, pág. 722.
De igual forma, los colindantes de carreteras que se construyan con acceso controlado, no tienen un derecho a lograr entrada o salida a las mismas. A lo que sí tiene derecho un propietario es a un acceso razonable a su propiedad. Dicho derecho se ha definido "como la facultad de entrar y salir del fundo al sistema general de vías públicas y no a una carretera específica. ” E.L.A. v. Rodríguez, supra, pág. 641.
Sin embargo, está decidido que si un propietario queda privado totalmente de acceso a la vía pública, debe ser compensado. Esto es así porque se entiende que la propiedad ha quedado enclavada. Texaco v. Secretario, supra; ELA v. Secretario, supra. Es decir, no es compensable la pérdida de acceso directo a una vía pública, pero sí lo es la obstmcción total de acceso como resultado de una expropiación en donde la finca remanente ha quedado enclavada.
La finca objeto de este litigio, es dedicada a vaquería. Al realizarse la expropiación, la principal quedó dividida en dos remanentes debido a la construcción de un puente de 30 pies de altura sobre la parcela expropiada. Aún después de ello, el ganado continuaba teniendo acceso de un remanente a otro por debajo del puente. De los autos surge, asimismo, que la finca principal, antes de la expropiación, tenía acceso a vía pública. Ello no se cuestiona, ni refuta.
Para sostener su posición en este caso, la parte apelada descansa principalmente en un acuerdo donde alegadamente se comprometió la Autoridad a permitir acceso directo a la carretera #203 desde los remanentes oeste y este de la finca principal, el cual con posterioridad alteró, cambiando los planos y variando el concepto de la carretera a uno de acceso controlado cuando originalmente se previo como de libre acceso.
La Autoridad argumenta al respecto que al así actuar lo hizo según las facultades conferidas por su ley habilitadora, Ley Núm. 74 del 23 de junio de 1965 (9 L.P.R.A. see. 2004). Las mismas otorgan lo siguiente:
"(d) Tener completo control y supervisión sobre cualesquiera facilidades de tránsito poseídas, operadas, construidas o adquiridas por ella bajo las disposiciones de este Capítulo, incluyendo, sin limitación, la determinación del sitio, localización y el establecimiento, límite y control de los puntos de ingreso y egreso de tales facilidades, y los materiales de construcción y la construcción, mantenimiento, reparación y operación de las mismas;

*1125
(e) Preparar o hacer que se preparen planos, diseños, estimados de costo de construcción, extensión, mejoras, ampliación o reparación de cualesquiera facilidades de tránsito o de transportación o parte de las mismas y modificar tales planos, diseños y estimados."

En apoyo de su posición, cita los casos de Texaco v. Secretario, supra, y ELA v. Rodríguez, supra. Ambos tratan de la situación en donde la parte a quien se le expropió una porción de su propiedad, quedó con un acceso indirecto a la vía pública, en vez de uno directo. En ambos casos se reitera la doctrina de que un propietario sólo tiene derecho a un acceso razonable a su propiedad, de modo que el hecho de que los indirectos resulten más largos e inconvenientes, son "molestias que los propietarios vienen obligados a compartir con el resto de la comunidad." ELA v. Rodríguez, supra. (Enfasis suplido.)
Al resolver el caso, el tribunal de instancia ordenó a la Autoridad que proveyese acceso a la carretera 203 por el lado de los dos remanentes. Se basó en que ese fue el acuerdo verbal que sostuvo el ingeniero Montañez con la apelada. Añadió que a esos efectos se confeccionó un plano y se constmyó el proyecto brindando acceso a la carretera desde ambos remanentes. Determinó, asimismo, que después "de terminada la construcción", la Autoridad "instaló vallas de metal haciendo imposible la entrada o salida de los remanentes a la nueva carretera." Sobre ese extremo, el Director Ejecutivo del Area de Adquisición de la Autoridad declaró que "alguien tuvo que tomar la determinación de establecer control de accesos estableciendo vallas".
Reprobó la acción de la agencia al cambiar el diseño de la carretera para convertirla a una de acceso controlado. Censuró su conducta al no presentar prueba durante la vista del caso sobre estudios para tomar la determinación de controlar el acceso a la carretera 203 "por razones de peligrosidad". Calificó como de "sospechosa" dicha acción. Afirmó que ésta no se preocupó "ni demostró interés en resolver el problema de acceso" y que su actitud de estar "estudiando qué hacer con las fincas a las que se le proveyó acceso" y auscultando alternativas para proveerlo a las que se quedaron sin él, demuestra "que la determinación de poner vallas fue caprichosa y arbitraria."
Concluyó, finalmente, que el remedio recomendado por la Autoridad, consistente en proveerle a la apelada acceso del remanente oeste al este mediante la constitución de una servidumbre, no es el más adecuado, además de que fue presentado tardíamente. De tal forma, ordenó a la Autoridad remover las vallas instaladas y permitir acceso a ambos remanentes desde la carretera 203.
Incidió al así resolver. Los derechos de los propietarios colindantes con las calles y carreteras están sujetos al derecho del Estado a reglamentar el uso de las mismas para beneficio del público. Si bien se reconoce el del dueño de un fundo a ser compensado cuando el acceso a una vía pública se obstruye totalmente, esa no aparenta ser la situación del caso que nos ocupa. Aquí la Autoridad, a petición del tribunal, convino en conceder una servidumbre de paso de seis (6) metros de ancho por quince (15) de largo para permitir acceso entre el remanente oeste, que resultó enclavado, con el este. De los autos no surge que la salida a la vía pública que disponía la finca antes de la expropiación, según lo afirma la Autoridad, se haya alterado, eliminado u obstruido.
Los hechos en que se basa el tribunal para concluir que la propiedad de la parte apelada ha sido privada de acceso, no están del todo claros. Ello así, debido a que, unido a lo anterior, en el segmento de la sentencia donde se comienza a determinar los hechos, se da la impresión de que el remanente enclavado es el oeste sin que nada se diga sobre el este. Véase, pág. 3 de la sentencia, 122 del apéndice del recurso. Asimismo, en la primera página, la jueza sentenciadora expresa que "[djurante la inspección ocular, se dictaminó que el remanente oeste de la finca había quedado enclavado por motivo de la expropiación." Véase, también, página 6 de la sentencia donde se consigna la siguiente afirmación: "La Autoridad alega que la parte con interés no ha probado la existencia de un daño por desmembramiento, pero olvida que desde diciembre de 1998 existe una determinación de este Tribunal de que el remanente oeste de la finca quedó enclavado por la acción unilateral, 1 arbitraria y caprichosa de la Autoridad." No obstante, y a pesar de lo anterior, después en la misma sentencia, *1126 el foro a quo expresa que "la propiedad de la parte con interés, quedó enclavada" sin decir a cuál de los dos remanentes se refiere. Véase, pág. seis (6) de la sentencia, 125 del apéndice.
De igual forma, carece de base el récord para sostener que el alegado acuerdo de la apelada con el ingeniero Montañez obliga a la Autoridad. Como señala dicha agencia en sus escritos, la sentencia apelada no establece la facultad del referido ingeniero para obligarla mediante un acuerdo verbal. Ante esos hechos, resolver lo contrario promueve revalidar una práctica en la contratación que no sólo atenta contra la más correcta administración pública, sino que socava su efectividad.
De otra parte, el artículo 2-05 de la Ley 54 de 30 de mayo de 1973 (9 L.P.R.A. see. 2205), autoriza al Secretario de Transportación y Obras Públicas a designar o convertir cualquier carretera, o parte de ella, en carretera de accesos limitados o controlados. Asimismo, le concede facultad para negar la constmcción de accesos directos hacia y desde cualquier carretera así convertida y permitir accesos en sitios designados.
Demuestra el citado precepto que la autoridad delegada para decretar que una carretera será de acceso controlado compete al Secretario de Transportación y Obras Públicas. Igualmente dicho funcionario es quien tiene la facultad para establecer requisitos en los puntos de acceso que tenga a bien designar, así como las medidas necesarias para preservar la utilidad, integridad y uso de las carreteras de accesos controlados.
Como se ve, a quien compete designar una carretera como de acceso controlado es al señor Secretario de Transportación y Obras Públicas. Sobre dicho funcionario recae la autoridad para permitir accesos solamente en sitios designados, previo al cumplimiento de aquellos requisitos que establezca con miras a preservar la utilidad, integridad y uso de las carreteras.
En el caso de autos, la sentencia apelada parte de la premisa, sin cimiento en el récord, de que el ingeniero Montañez estaba autorizado para acordar con la parte apelada un acceso a sus remanentes desde la carretera 203, la cual supuestamente se designó como de acceso controlado. Dio mayor consideración al hecho de que en el plano original sometido, no aparecían las vallas de seguridad que luego se instalaron. Concluyó, también, sin ofrecer explicación alguna, que la servidumbre que se comprometió la Autoridad a construir a favor del remanente oeste para que se tenga entrada al remanente este, no es un acceso apropiado. De la misma forma, determinó que la totalidad de la finca de la parte apelada quedó enclavada cuando en una parte de la sentencia parece aludir a que el remanente enclavado es el oeste, sin que los autos reflejen que la carretera 203 haya obstruido el acceso original de la finca a vía pública.
No hay duda que la instalación de vallas o su falta, por sí sólo, no es indicativo de autorizar o negar el acceso de una finca colindante a una carretera de acceso controlado. Permitir accesos en una carretera que se designa controlada, conlleva una determinación del Secretario de Transportación y Obras Públicas a esos fines. Nada en la ley dispone que las vallas instaladas, o la falta de ellas, significa que una finca privada tenga o no acceso a una carretera que ha sido designada como de acceso controlado. Ciertamente, la determinación del Secretario de designar una carretera como de acceso controlado, cae dentro de las amplias facultades delegadas por el estatuto. En ausencia de prueba administrativa de que dicha actuación es una arbitraria y caprichosa, no debemos intervenir con el criterio del susodicho funcionario.
Ahora bien, para poder resolver la controversia suscitada, amerita que se aclaren ciertos extremos relacionados con la designación de la carretera 203 como una de acceso controlado. Igualmente, desconocemos los fundamentos en que se basó el tribunal sentenciador para determinar que el acceso provisto por la Autoridad mediante la constitución de una servidumbre, es inapropiado. No es suficiente así concluirlo por el hecho de haber sido tardía la comparecencia de la Autoridad, como lo expresó el foro sentenciador.
Consiguientemente, por estar los autos carentes de pmeba que acredite la determinación del Secretario para designar la carretera 203 como una de acceso controlado y destinar sitios designados para permitirlo, de éstos *1127 haberse establecido, no estamos en posición de evaluar y adjudicar la controversia en su correcta perspectiva. Finalmente, amerita aclararse qué ocurrió con el acceso original de la finca la vía pública y si el remanente este quedó enclavado sin acceso. Asimismo, adjudicar con fundamentos la suficiencia o falta de ella con respecto a la constitución de una servidumbre de paso que conecte el remanente oeste con el este.
En vista de todo ello, se revoca la sentencia apelada. Devolvemos el asunto al foro de instancia para que luego de celebrada una vista donde tenga la oportunidad de observar la determinación del Secretario sobre los particulares relacionados con la designación de la carretera 203 como de acceso controlado y demás particulares, adjudique lo correspondiente a tenor de las disposiciones aplicables tomando en consideración los principios envueltos antes expresados. Incluso deberá determinar, con claridad, lo referente a si los dos remanentes quedaron enclavados como resultado de la expropiación o si ello abarca sólo el remanente oeste, así como el efecto que tiene sobre la falta de acceso de un remanente a otro la constitución de una servidumbre como la que propone la Autoridad. Ciertamente, de haber quedado ambos remanentes enclavados, se activa el derecho de la parte apelada a que la Autoridad le proporcione un acceso razonable de su finca a la vía pública. Nada de lo anterior impide que de tener alguna consecuencia la decisión que se tome sobre la justa compensación y la estipulación acordada, así también lo establezca y provea los remedios apropiados.
Por los motivos consignados, se revoca la sentencia apelada y se devuelve el asunto al Tribunal de Primera Instancia para que continúe con los procedimientos de forma compatible con lo aquí resuelto.
Lo acuerda el Tribunal y lo certifica la Subsecretaría General.
Gladys E. Ortega Ramírez
Subsecretaría General
ESCOLIO 2001 DTA 96
1. Citada textualmente, la aludida expresión dice así:
"La expropiación dividió la finca en dos porciones quedando dos remanentes uno al este y otro al oeste de la obra pública; el remanente oeste quedó con las siguientes colindancias luego de la expropiación: por el NORTE, con propiedad de Francisco y José Unanue Casal; por el SUR, con servidumbre del Río Grande de Loíza; por el ESTE, con la carretera número [2031; y por el OESTE con propiedad de Francisco y José Unanue Casal. Al no tener acceso directo a la carretera número [203] por motivo de la instalación de vallas, dicho remanente de alrededor de 60 cuerdas, quedó enclavado según fue determinado por este Tribunal durante la inspección ocular celebrada el 22 de diciembre de 1998. Id., pág. 3 sentencia apelada." (Enfasis suplido.)