José R. Vélez Reboyras, etc., demandantes y recurridos, *v.* Secretario de Justicia, demandado y recurrente.

*Número:* R-83-382       *Resuelto:* 25 de junio de 1984

534

*Ricardo E. Alegría Pons, Procurador General Auxiliar,* abogado de El Pueblo, recurrente; *Pedro T. Anca Marín* y *Jorge Orama Monroig,* abogados de los recurridos.

EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ emitió la opinión del Tribunal.

La Ley Núm. 45 de 4 de junio de 1982, en lo pertinente, establece que:

. . . . . . . .

Sección 1. —Ningún establecimiento donde se operen máquinas electrónicas de juegos o máquinas de "Pin Ball" que funcionen con monedas o fichas podrá situarse a una *distancia menor de doscientos (200) metros de una escuela* pública o privada.

Los establecimientos dedicados *exclusivamente* a operar máquinas electrónicas de juegos o máquinas de "Pin Ball" que funcionen con monedas o fichas *que ya estuvieren situados* a una distancia menor de la aquí establecida, *permanecerán cerrados durante las horas de funcionamiento del plantel escolar* en cuya proximidad se hallen.

Aquellos establecimientos que se dediquen a otro tipo de negocio en los cuales haya ubicadas máquinas electrónicas de juegos o máquinas de "Pin Ball" que funcionen con monedas o fichas y los cuales ya estuvieren situados a una distancia menor de la aquí establecida, no podrán operar ni permitir que sean operadas dichas máquinas durante las horas de funcionamiento del plantel escolar en cuya proximidad se hallen.

Sección 2. —Toda persona que infringiere las disposiciones de la Sección 1 de esta ley incurrirá en delito menos grave y convicto que fuere será castigado con multa que no excederá

de quinientos (500) dólares. Cada infracción constituirá un delito distinto y separado.

Sección 3. —Esta ley empezará a regir desde la fecha de su aprobación. (Énfasis suplido.)

El demandante-recurrido José Vélez Reboyras es dueño de un negocio dedicado exclusivamente a máquinas electrónicas de video-juegos en Utuado, Puerto Rico, el cual se encuentra ubicado a menos de doscientos (200) metros de la Escuela Pública Elemental Félix Seijo. El señor Vélez Reboyras ha sido denunciado por agentes de la Policía de Puerto Rico en diez (10) ocasiones por supuestamente infringir las disposiciones de la citada Ley Núm. 45. En octubre de 1982, el señor Vélez Reboyras instó demanda sobre *injunction* preliminar y permanente ante el honorable Tribunal Superior de Puerto Rico, Sala de Utuado, en la cual solicitó de dicho foro, en síntesis, que le prohibiera a la Policía de Puerto Rico el denunciar y/o interferir con dicho negocio y que declarase la referida Ley Núm. 45 inconstitucional en su aplicación al negocio de su propiedad.

Luego de celebrada una vista evidenciaria, el tribunal de instancia,[1] mediante una confusa orden de fecha 4 de mayo de 1983, concedió lo solicitado. Determinó en síntesis que, a pesar de que el negocio del demandante-recurrido en efecto se encontraba localizado a menos de doscientos (200) metros de la escuela elemental en controversia y que en virtud de la "estricta aplicación de la Ley número 45" dicho negocio debía permanecer cerrado durante las horas de funcionamiento de la escuela, procedía conceder lo solicitado por razón de que: el obligar a los demandantes a cerrar su negocio tiene el "efecto práctico de privar a éstos del libre uso y disfrute de su propiedad sin la debida compensación por el Estado"; que quedó demostrado "una clara violación de la igual protección de las leyes" por cuanto hay un "patrón de evidente discrimen contra los imputados y abuso patente de

---

[1] Hon. Rubén Hernández Rosario, Juez.

discreción de las autoridades policíacas al aplicar la Ley #45" ya que sólo se interviene con el negocio del demandante y no con otros negocios en circunstancias similares; que por dicho negocio haber sido establecido con anterioridad a la fecha de aprobación de la Ley Núm. 45, los demandantes tenían "derechos adquiridos que no pueden ser violados"; y que la aplicación de la citada ley al negocio de los demandantes es "irrazonable, arbitraria y caprichosa, ya que resulta confiscatoria de la propiedad de éstos; les obliga a funcionar con pérdidas y los pone en claro peligro de perder todas sus propiedades" privándolos de ese modo "de su propiedad sin seguirse el debido procedimiento de ley".

Inconforme, el señor Secretario de Justicia de Puerto Rico recurrió ante este Tribunal. A los fines de evaluar el recurso, ordenamos la transcripción de los procedimientos celebrados en instancia. Examinada dicha transcripción de evidencia, mediante resolución de fecha 23 de diciembre de 1983, requerimos de la parte demandante-recurrida el que mostrara causa por la cual este Tribunal no debía revocar la orden emitida por el tribunal de instancia de fecha 4 de mayo de 1982. Dicha parte ha comparecido. Estando en condiciones de resolver el recurso, procedemos a así hacerlo.

## I

Como surge de una simple lectura de la misma, la ley aquí en controversia establece unas clasificaciones. Veamos si ello infringe la cláusula sobre igual protección de las leyes. Como es sabido en el análisis constitucional bajo la referida cláusula en muchas jurisdicciones se utilizan tres (3) criterios (*tests*), a saber: 1—el de escrutinio estricto o del examen minucioso; 2—el intermedio; y 3—el tradicional mínimo o de nexo racional, clasificación tripartita que ha sido criticada en otros foros. Véanse *León Rosario* v. *Torres*, 109 D.P.R. 804, 813–815 (1980); *Zachry International* v. *Tribunal Superior*, 104 D.P.R. 267 (1975); *Marina Ind., Inc.* v. *Brown Boveri Corp.*, 114 D.P.R. 64 (1983); y S. H. Bice,

*Standards of Judicial Review Under the Equal Protection and Due Process Clauses,* 50 So. Cal. L. Rev. 689 (1977).

Los dos primeros criterios no son aplicables al caso de autos; (²) sí lo es el tradicional mínimo o de nexo racional. Éste dispone que una clasificación legislativa no debe ser declarada inválida a menos que sea claramente arbitraria y no pueda establecerse nexo racional alguno entre la misma y un interés legítimo del Estado. Bajo este criterio se ha resuelto que es constitucional una ley siempre que pueda concebirse razonablemente una situación de hechos que justifique la clasificación, teniendo el peso de la prueba aquel que alega la inconstitucionalidad de la legislación en controversia. *Zachry International* v. *Tribunal Superior,* ante; L. H. Tribe, *American Constitutional Law,* Mineola, N.Y., Foundation Press, 1978, Sec. 16-2, págs. 994–996.

A esos efectos, en *Marina Ind., Inc.* v. *Brown Boveri Corp.,* ante, pág. 81, expresamos que bajo el criterio tradicional cuando "se trata de *legislación de tipo económico o social,* sólo exige que la clasificación no sea arbitraria y que la misma pueda establecer un nexo racional con los propósitos del estatuto".

Este es el caso que nos ocupa. La exposición de motivos de la citada Ley Núm. 45 constituye un resumen excelente de la situación imperante y el "mal social" que nuestro legislador correctamente quiso corregir o regular al aprobar

---

(²) El criterio del escrutinio estricto impone el nivel más riguroso de revisión sobre la legislación impugnada. Bajo este criterio la clasificación se considerará inconstitucional a menos que se pueda justificar por un interés gubernamental apremiante. Este criterio es generalmente utilizado cuando una ley establece una clasificación inherentemente sospechosa o cuando se afectan derechos fundamentales. Están sujetos a un minucioso examen judicial, por considerarse inherentemente sospechosas, todas las clasificaciones tangentes con la dignidad del ser humano y con el principio de la igualdad ante la ley. *Wackenhut Corp.* v. *Rodríguez Aponte,* 100 D.P.R. 518 (1972).

En Puerto Rico no hemos aplicado nunca el criterio intermedio. Contrario a la jurisprudencia del Tribunal Supremo de Estados Unidos, la discriminación por razón de sexo o nacimiento está sujeta al criterio de escrutinio estricto y no al intermedio.

dicha legislación. Se expresó en dicha exposición de motivos que:

En los últimos años se ha proliferado el establecimiento de máquinas electrónicas de juegos y máquinas de "Pin Ball" operadas por monedas, en diferentes clases de negocios. Muchos de estos negocios están ubicados en la proximidad de escuelas. *La clientela mayor para este tipo de juegos lo constituyen los niños y jóvenes en edad escolar.*

*La aglomeración de niños y jóvenes en estos negocios generan ruidos que interrumpen las labores académicas. La accesibilidad de estos negocios favorece que muchos escolares se ausenten de clases para jugar en estas máquinas lo que ocasiona que se afecte adversamente su aprovechamiento académico. En adición a esto muchos estudiantes se privan de algún alimento para utilizar los pocos recursos de que disponen jugando en estas máquinas.*

Las ganancias producidas por estas máquinas es tal que se han establecido negocios dedicados exclusivamente a ese propósito.

*Es responsabilidad del Estado velar por el bienestar de todos los ciudadanos especialmente aquellos que por su juventud e inexperiencia son más vulnerables.* Procede, pues, legislar a fin de que los negocios donde se operan estas máquinas de juegos se ubiquen a prudente distancia de los planteles escolares *y en el caso de aquellos que ya estén situados en la proximidad de las escuelas se limiten las horas en que pueden operar dichas máquinas con el propósito de mantener el clima de estudio que debe prevalecer en todo centro docente para beneficio de los estudiantes que acuden a los mismos.* (Énfasis suplido.)

■ Resolvemos que la Ley Núm. 45 de 4 de junio de 1982 es razonable y corresponde a un interés legítimo por parte del Estado que cumple con los requisitos de la cláusula de la igual protección de las leyes.

## II

Como hemos visto, el tribunal de instancia dictaminó que la aplicación al caso de autos de la citada Ley Núm. 45 tenía el efecto de privar a los demandantes recurridos "de su pro-

piedad sin seguirse el debido procedimiento de ley", era "irrazonable, arbitraria y caprichosa, ya que resulta confiscatoria de la propiedad de éstos", y que los demandantes tenían "derechos adquiridos que no pueden ser violados . . .".

Dispone el Art. II, Sec. 7, de la Constitución del Estado Libre Asociado de Puerto Rico que ninguna persona será privada de su libertad o propiedad sin el debido proceso de ley. No hay duda de que el derecho a la propiedad privada constituye uno de los pilares sobre los cuales descansa nuestro ordenamiento jurídico y nuestro sistema democrático de gobierno. Ello no significa, sin embargo, que dicho derecho sea uno de naturaleza absoluta o, como se consideraba en antaño, uno "sagrado". En el mundo en que vivimos "al propietario no sólo se le reconocen derechos, sino que, además, se le requiere el cumplimiento de ciertos deberes para la sociedad; es decir, el contenido de la propiedad, como afirman Wolff y Raiser, 'puede ser configurado de tal suerte, en interés público o en el de la economía general, que al propietario le sean negadas determinadas formas de uso, o se le impongan deberes de tolerancia, o se le exijan acciones positivas'". J. R. Vélez Torres, *Curso de Derecho Civil*, San Juan, Art Printing, 1983, T. II, pág. 74. En otras palabras, en el mundo moderno la propiedad, en adición a servir a su dueño, también debe servir a la sociedad. *Rivera v. R. Cobián Chinea & Co.*, 69 D.P.R. 672 (1949).

En *E.L.A.* v. *Márquez*, 93 D.P.R. 393, 402 (1966), señalamos que hoy día "ya no se cuestiona seriamente que en el ejercicio de su poder de reglamentación en el interés público el Estado puede adoptar medidas para proteger la salud, la moral y el bienestar general de la comunidad, sin que las restricciones que surjan de tales medidas sean contrarias al concepto de debido procedimiento de ley. Este poder del Estado moderno de velar por los antes mencionados valores sociales es también su deber. Es sabido, que en ocasiones es necesario que en el ejercicio del poder público del Estado se llegue hasta a destruir propiedad privada sin compen-

sación". A esos mismos efectos véase, en adición, *Bordas & Co.* v. *Srio. de Agricultura*, 87 D.P.R. 534, 547–548 (1963).

█ A pesar de que, como sabemos, ese poder del Estado no es ilimitado y el ejercicio del mismo nunca puede ser arbitrario o irrazonable, *Warner Lambert Co.* v. *Tribunal Superior*, 101 D.P.R. 378 (1973), el hecho de que en determinada ocasión el *ejercicio legítimo* de dicho poder haga imposible la utilización más económica de una propiedad en particular no lo hace inconstitucional, *Texaco, Inc.* v. *Srio. de Obras Públicas*, 85 D.P.R. 712 (1962), debiendo resolverse cada caso a base de sus hechos particulares. *Vélez* v. *Municipio de Toa Baja*, 109 D.P.R. 369 (1980); *Berman* v. *Parker*, 348 U.S. 26, 32 (1954).

█ Dispone por su parte el Art. 3 de nuestro Código Civil, 31 L.P.R.A. sec. 3, en lo pertinente que en "ningún caso podrá el efecto retroactivo de una ley perjudicar los derechos adquiridos al amparo de una legislación anterior".

Scaevola, al comentar el artículo del Código Civil español equivalente al citado Art. 3, expresa que sería "contrario a la esencia del Poder legislativo el que éste estuviese como atado por la regla de que la ley no dispone más que para el porvenir. . . . *Hay casos . . . en que la ley debe regir el pasado, sea en interés social, sea en interés de los ciudadanos.* De aquí que el legislador no debe estar encadenado por un principio absoluto, que coartaría su libertad de acción en perjuicio de la sociedad y los individuos". [3] (Énfasis suplido.)

M. Albadalejo, *Comentarios al Código Civil y compilaciones forales*, [4] por su parte expresa:

*Pero la retroactividad es en muchas ocasiones indispensable y es precisamente un medio de transformación y progreso de situaciones pasadas que se consideren de conveniente remoción,* y como la ley debe ser conveniente al lugar y al tiempo, no se puede renunciar de antemano a lo que es un instrumento para

[3] Q. M. Scaevola, *Código Civil*, 6ta ed., Madrid, Ed. Reus, 1949, T. I, pág. 237.

[4] Madrid, Ed. Rev. Der. Privado, 1978, T. I, págs. 74–76.

esa necesaria evolución cual acontece con la predicha retroactividad.

Por otra parte no hay que olvidar que hay leyes que son esencialmente retroactivas, v. gr. las que tienen por objeto interpretar una disposición anterior. Así lo entiende la doctrina y lo acepta el T.S.

*Consecuencia de todo lo dicho es que el principio de la absoluta irretroactividad resulta falso*, razón por la que nuestro Código civil, en antiguo artículo tercero, y hoy en el 2.º-3, corrige y dice: "Las leyes no tendrán efecto retroactivo, si no dispusieren lo contrario".

Pero ni aún así resulta exacta la regla, siquiera reconozca la posible retroactividad de la ley. Porque parece que ésta sólo se producirá cuando hay una disposición expresa en la propia ley y esto no es así, pues implícitamente puede establecerse la retroactividad por el simple hecho de que se refiera a situaciones pasadas, *o que su contenido revele claramente que para su debida aplicación ha de dársele precisamente carácter retroactivo.* (Énfasis suplido y escolios omitidos.)

■■■ Conforme a lo anterior, hemos resuelto en el pasado que las disposiciones del citado Art. 3 del Código Civil sólo tienen el alcance de una regla general de interpretación de estatutos, no constituyen sus disposiciones un principio rígido de aplicación absoluta. *Warner Lambert Co.* v. *Tribunal Superior,* ante, pág. 384. Más adelante expresamos en dicho caso —pág. 396— que la "razonabilidad del estatuto se determina tomando en consideración principalmente la sustancialidad del interés público promovido por el mismo y la dimensión del menoscabo ocasionado por su aplicación retroactiva" y que mientras "más grave sea el mal social que el estatuto intenta remediar más grande es el interés público envuelto, y, por tanto, mayor justificación para su aplicación retroactiva".

No consideramos que la ley aquí en controversia menoscabe "derechos adquiridos" del recurrido "al amparo de una legislación anterior". El "derecho" que le asistía a éste antes de la aprobación de la citada Ley Núm. 45 era aquel que bajo nuestro ordenamiento jurídico tiene toda persona a dis-

frutar libremente de su propiedad, precisamente, sin más limitaciones que las que imponen las leyes aplicables; "derecho" naturalmente sujeto al poder de reglamentación y de razón del Estado en protección del bien común. No existía, antes de la aprobación de la Ley Núm. 45, *legislación específica* que le confiriera a persona alguna el "derecho" a operar ilimitadamente un establecimiento dedicado exclusivamente a la operación de máquinas de *pin balls*. Al recurrido no se le ha confiscado propiedad tangible; continúa con el título de sus bienes. Únicamente, en favor del bien común, se le ha limitado la facultad de utilizar su propiedad *en determinada manera y a partir de la aprobación de la citada Ley Núm. 45.*

Como expresáramos anteriormente, la Ley Núm. 45 de 4 de junio de 1982 corresponde a un interés legítimo por parte del Estado que cumple con los requisitos de la cláusula sobre el debido procedimiento de ley. La misma intenta *corregir* o *controlar* un "mal social" que está afectando a nuestra juventud, cuyo futuro, formación educativa y bienestar es la obligación de todos. Dicha ley no ordena la erradicación total de los negocios que existían con anterioridad a su aprobación; meramente limita las horas durante las cuales éstos pueden operar, ordenando que permanezcan cerrados *durante las horas de clase* de las escuelas aquellos que se dedican exclusivamente a la operación de las máquinas en controversia. Ello es razonable; evita a los estudiantes la tentación de ausentarse de las aulas para ir a jugar en dichas máquinas. *Cf. Pueblo* v. *García & García*, 22 D.P.R. 817 (1915). Resolvemos que este es uno de los casos en que el interés propietario tiene que ceder ante el bien común.

### III

La ley aquí en controversia tampoco adolece del defecto de nulidad por razón de ser la misma vaga, imprecisa o ambigua. Como regla general, una ley es nula por razón de vaguedad si personas de inteligencia común se ven

obligadas a adivinar su significado, *Pueblo* v. *Mantilla*, 71 D.P.R. 36 (1950); *In re Guzmán Géigel*, 113 D.P.R. 122 (1982); y si resulta difícil el poder establecer la forma y manera en que la ley debe ser aplicada, creando en consecuencia el peligro de que la misma pueda ser arbitraria y discriminatoriamente "administrada", *Smith* v. *Goguen*, 415 U.S. 566 (1974); *Aladdin's Castle, Inc.* v. *City of Mesquite*, 630 F.2d 1029 (1980).

▬ En otras palabras, como expresáramos en *In re Guzmán Géigel*, ante, pág. 129, la "doctrina de nulidad por imprecisión no solamente requiere que se alerte adecuadamente a la persona sobre la conducta prohibida sino que requiere de la Asamblea Legislativa que establezca guías razonablemente claras para regir la discreción que pueda tener el funcionario a cargo de la implementación del estatuto". Ello no quiere decir, sin embargo, que debemos caer "en la superficialidad de creer que una ley penal es nula por defecto de vaguedad debido a que requiera interpretación". Como señala el maestro Jiménez de Asúa, "todas las leyes, aun las 'clarísimas' requieren interpretación". *Pueblo* v. *Trib. Superior*, 81 D.P.R. 763 (1960).

▬ Un examen objetivo de las disposiciones de la citada Ley Núm. 45 de 4 de junio de 1982 nos convence, repetimos, que la misma no adolece del defecto de vaguedad. La misma le da una oportunidad razonable a un ciudadano de ordinaria inteligencia para saber lo que ésta le prohíbe realizar y provee normas lo suficientemente claras para aquellos que tienen la responsabilidad de implementar la misma.

## IV

Consideramos, por último, la determinación del tribunal de instancia de que quedó demostrado un "patrón de evidente discrimen contra los imputados y abuso patente de discreción de las autoridades policíacas al aplicar la Ley #45" ya que la Policía de Puerto Rico sólo intervenía con el

negocio de los demandantes-recurridos y no con otros negocios en circunstancias similares.

El caso normativo en la jurisdicción federal sobre la violación a la cláusula constitucional de la igual protección de las leyes cuando un estatuto, válido de su faz, es aplicado en una forma discriminatoria lo es *Yick Wo* v. *Hopkins*, 118 U.S. 356, 373-374 (1886). Expresó el Tribunal Supremo de los Estados Unidos, en lo pertinente, que: "Though the law itself be fair on its face and impartial in appearance, yet, if it is applied and administered by public authority with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances, material to their rights, the denial of equal justice is still within the prohibition of the Constitution." Véanse, en adición, *Hernández* v. *Texas*, 347 U.S. 475 (1954); *Palmer* v. *Thompson*, 403 U.S. 217 (1971).

En *A.R.P.E.* v. *Chang Louk*, 113 D.P.R. 295, 297 (1982), expresamos que en "ausencia de prueba de un patrón de *evidente discrimen y abuso patente de discreción,* una persona o entidad no puede justificar su violación de la ley sobre la base de que no se ha perseguido a otros infractores". (Énfasis suplido.) *United States* v. *Nixon*, 418 U.S. 683 (1974).

Es correcto que no somos dados a intervenir con frecuencia con las determinaciones de hecho que hace un tribunal de instancia y a sustituir nuestro criterio por el del juzgador ante quien declararon los testigos y quien tuvo la oportunidad de verlos declarar y apreciar su *demeanor, Ramos Acosta* v. *Caparra Dairy, Inc.*, 113 D.P.R. 357 (1982), a menos que se demuestre que dicho foro actuó con pasión, prejuicio o parcialidad. *Pueblo* v. *Cruz Negrón*, 104 D.P.R. 881 (1976). Sin embargo, el arbitrio del juzgador de hechos es respetable, mas no es absoluto. Una *apreciación errónea* de la prueba no tiene credenciales de inmunidad frente a la función revisora de este Tribunal. *Vda. de Morales* v. *De Jesús Toro*, 107 D.P.R. 826 (1978).

Una lectura de la transcripción de evidencia que ordenáramos en el presente caso demuestra que la única prueba que tiende a sostener la determinación o conclusión del tribunal de instancia a los efectos de que quedó demostrado un "patrón de evidente discrimen" contra los demandantes-recurridos lo es precisamente la declaración que prestara en la vista celebrada *el propio demandante* a los efectos de que otros dueños de negocios de máquinas de video-juego en el área de Utuado no habían sido denunciados. No tomó en consideración el tribunal de instancia la declaración del policía estatal William Collazo a los efectos de que él personalmente ha realizado visitas de inspección a otros negocios en dicha área de similar naturaleza pero que no los ha denunciado por razón de que éstos, al momento de su intervención, no han estado violando dicha ley.[5] La prueba presentada por la parte demandante claramente no demuestra el "patrón de evidente discrimen y abuso patente de discreción" requerido por este Tribunal en *A.R.P.E.* v. *Chang Louk,* ante.[6]

Ante dicha realidad, estamos convencidos que la determinación antes señalada que hiciera el tribunal de instancia no representa el balance más racional, justiciero y jurídico de *la totalidad de la evidencia* que desfilara ante instancia y por lo tanto la misma no debe prevalecer. *Sanabria* v. *Sucn. González,* 82 D.P.R. 885 (1961); *Abudo Servera* v. *A.T.P.R.,* 105 D.P.R. 728 (1977).

Por las razones antes expresadas, *se expide el auto y se dicta sentencia que revoca la orden de fecha 4 de mayo de 1982 emitida por el tribunal de instancia.*

El Juez Asociado Señor Torres Rigual concurre en el resultado sin opinión.

---

[5] T.E., pág. 40.

[6] Como expresáramos en *Del Rey* v. *J.A.C.L.,* 107 D.P.R. 348 (1978), la "igual protección de las leyes no implica igual protección de la violación de las leyes".