

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Consejo de Titulares Condominio Portal de Sofía<br><br>        Recurrido<br><br>                    v.<br><br>Portal de Sofia, Inc.<br>        Peticionario<br><br>Víctor Suárez Meléndez, en su cará                cter de Secretario del Departamento de Asuntos al Consumidor<br>        Agencia Recurrida | Certiorari<br><br>2011 TSPR 76<br><br>181 DPR ____ |

Número del Caso: CC        - 2008 - 1094


Fecha: 24 de mayo de 2011


Tribunal de Apelaciones:

        Regió   n Judicial de San Juan, Panel IV


Juez Ponente:

        Hon. Sixto Hernández Serrano


Abogados de la Parte Peticionaria:

        Lcdo. Alberto Rodríguez Ramos
        Lcda. Arlyn González          - Díaz


Abogada de la Parte Recurrida:

        Lcda. Seyri Cabán Muñiz

Departamento de Asuntos al Consumidor:

        Lcdo. Roberto Maldonado Rivera

Materia:     Ley de Condominios Administración Interna

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso                de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Consejo de Titulares Condominio
Portal de Sofía

       Recurrido

         v.

Portal de Sofía, Inc.

      Peticionario

Víctor Suárez Meléndez, en su carácter de Secretario del Departamento de Asuntos del Consumidor

      Agencia Recurrida

Certiorari

CC-2008-1094

Opinión del Tribunal emitida por el Juez Asociado Señor Rivera García

En San Juan, Puerto Rico, a 24 de mayo de 2011.

En esta ocasión nos corresponde interpretar el Artículo 36-A de la Ley Núm. 103 de 5 de abril de 2003, según enmendada, conocida como Ley de Condominios, 31 L.P.R.A. sec. 1291 *et seq.* Específicamente, debemos determinar el momento preciso en el cual un desarrollador que asumió los gastos de mantenimiento durante la administración interina del edificio, adviene en la potestad de iniciar el cobro de la cuota de mantenimiento a los condóminos. Dicha gestión, ¿puede iniciarse tan pronto se enajene el porciento de apartamentos establecido por el desarrollador en la escritura matriz del régimen, o cuando se concluya el traspaso de la administración al Consejo de Titulares?

I

El Condominio Portal de Sofía (Condominio) es un complejo residencial ubicado en el Municipio de Guaynabo que alberga 130 unidades de vivienda distribuidas en 17 edificios de apartamentos. El 21 de enero de 2005 el desarrollador del proyecto, Portal de Sofía, Inc. (Desarrollador o peticionario), otorgó una *Escritura Matriz Estableciendo Régimen de Condominios del Condominio Portal de Sofía.*[1] Mediante este instrumento público, el Desarrollador sometió el Condominio al régimen de propiedad horizontal.

Entre los asuntos delimitados en la Escritura Matriz se encuentra la administración interina del Condominio. Al respecto, el Desarrollador optó por asumir los gastos de mantenimiento de las áreas comunales hasta que se vendiera el 75% del total de los apartamentos. En lo pertinente, la Escritura Matriz dispone lo siguiente:

> El DESARROLLADOR asumirá la administración interina del Condominio con todos los poderes y derechos que le confiere e impone la Ley de Condominios, esta escritura y el reglamento a la Junta de Directores y sus oficiales, y transferirá la administración del Condominio al Consejo de Titulares al venderse y entregarse las unidades que representen el setenta y cinco [por ciento] (75%) de las unidades del Condominio. Mientras EL DESARROLLADOR venda unidades en el Condominio, […] éste cobrará por adelantado a los adquirientes de los apartamentos el equivalente a tres (3) meses de cuotas de mantenimiento, dos (2) de los cuales serán abonados al fondo de reserva del Condominio. Las cuotas equivalentes al otro mes restante, serán depositadas por EL DESARROLLADOR en una cuenta para beneficio del

---

[1] Escritura Núm. 12 otorgada el 21 de enero de 2005 ante la notaria Adela Surillo Gutiérrez. Apéndice del recurso, págs. 112-319.

Consejo de Titulares, cuyo manejo será transferido a la Junta de Directores al momento de la transferencia de la administración del Condominio. Dichos fondos depositados en esta cuenta no serán utilizados para el pago de los gastos comunes del Condominio mientras EL DESARROLLADOR tenga a su cargo la administración interina del Condominio. El DESARROLLADOR comenzará a pagar las cuotas de mantenimiento de aquellas unidades que no se hayan segregado en fincas filiales una vez se haya traspasado la administración del Condominio a la nueva Junta de Directores y cobrará por adelantado a los adquirentes de las unidades las cuotas por tres (3) meses, dos (2) de los cuales serán para el fondo de reserva y el restante será para el pago del primer mes en que el nuevo titular sea dueño del apartamento. El DESARROLLADOR entregará dichos pagos a la Junta de Directores según EL DESARROLLADOR vaya vendiendo las unidades a los nuevos Titulares.[2]

La venta del 75% de las unidades se concretó el 5 de octubre de 2005 con la entrega del apartamento número 98 del proyecto. En atención a ello, el Desarrollador convocó a una asamblea de condóminos para el 19 de octubre del mismo año con el fin de transferir la administración del Condominio al Consejo de Titulares. Durante la reunión, uno de los titulares planteó que el Consejo de Titulares no estaba preparado para asumir la administración del Condominio, por lo que solicitó que se configurara un Comité de Transición.[3] El Desarrollador accedió a dicho petitorio, pero enfatizó que el traspaso tenía que culminar durante el mes de octubre debido a que "la comunidad tenía que comenzar a costear los gastos de

---

[2] Íd., pág. 312.

[3] Minuta de Reunión de 19 de octubre de 2005, Apéndice del recurso, pág. 338.

mantenimiento".[4] En ese sentido, el Desarrollador también manifestó su intención de comenzar a cobrar la cuota de mantenimiento a partir del 1 de noviembre de 2005.

Así las cosas, el 31 de octubre de 2005 el Desarrollador circuló un memorando a los titulares requiriendo el pago de la cuota de mantenimiento correspondiente al mes de noviembre de 2005. Solamente 47 de los titulares pagaron la cuota exigida por el Desarrollador para el referido mes. Finalmente, el 28 de noviembre de 2005 el Desarrollador entregó la administración interina del Condominio al Consejo de Titulares.

Posteriormente, el 6 de febrero de 2006 el Consejo de Titulares presentó en contra del Desarrollador una querella ante el Departamento de Asuntos del Consumidor (DACo) por incumplimiento en el proceso de entrega de la administración interina del Condominio. Entre sus alegaciones, el Consejo de Titulares señaló que el Desarrollador cobró ilegalmente la cuota de mantenimiento correspondiente al mes de noviembre de 2005, en contravención al Artículo 36-A(a)(1) de la Ley de Condominios, *supra*. Así, solicitó -entre otros remedios- que el DACo le ordenara al Desarrollador que reembolsara el pago recibido por este concepto a los respectivos titulares.[5] El Desarrollador, por su parte, se opuso a la referida querella. Asimismo, solicitó a la agencia que

---

[4] Íd.
[5] Querella de 6 de febrero de 2006, Apéndice del recurso, págs. 48-51.

desestimara la reclamación o que dispusiera de ella en forma sumaria.

Luego de varios trámites procesales, el 24 de enero de 2007 se llevó a cabo la vista administrativa. Durante la audiencia, el Consejo de Titulares se allanó al planteamiento del Desarrollador en cuanto a la ausencia de controversia sobre los hechos materiales del caso. Subsiguientemente, dicha parte renunció a su derecho a vista y aceptó que la querella se resolviera mediante el proceso sumario.

En atención a lo anterior, el 19 de febrero de 2008 el DACo dictó una Resolución Sumaria. Resolvió que el Desarrollador incumplió con el proceso establecido en el Artículo 36-A, incisos (c), (d) y (f), de la Ley de Condominios, *supra*, para el traspaso de la administración interina. Razonó que, si bien las disposiciones de los referidos incisos se activaban una vez se vendiera el 75% de los apartamentos, el Desarrollador -como administrador interino- mantenía su obligación de sufragar los gastos de mantenimiento según dispuesto en la Escritura Matriz hasta tanto el traspaso de la administración fuera efectivo. En vista que la transferencia oficial de la administración del Condominio al Consejo de Titulares se materializó el 28 de noviembre de 2005, el DACo concluyó que el Desarrollador estaba impedido de cobrar la cuota de mantenimiento correspondiente a noviembre de 2005. Así, pues, condenó al Desarrollador a reembolsar al Consejo de

Titulares la cantidad cobrada por ese concepto. La cuantía recibida sería, a su vez, acreditada a la cuenta de mantenimiento de los respectivos titulares.

Insatisfecho con el referido dictamen, el Desarrollador acudió al Tribunal de Apelaciones mediante un recurso de revisión de decisión administrativa. El 31 de octubre de 2008 el foro apelativo intermedió dictó Sentencia y confirmó la determinación recurrida. El tribunal a quo ratificó la interpretación efectuada por el DACo sobre el Artículo 36-A de la Ley de Condominios, *supra*, y concluyó que el Desarrollador estaba impedido de cobrar las cuotas de mantenimiento hasta tanto finalizara el proceso de traspaso de la administración al Consejo de Titulares.

Aún inconforme, el Desarrollador presenta ante este Tribunal el recurso de *certiorari* de epígrafe en el que nos señala el siguiente error:

> **Erró el Honorable Tribunal de Apelaciones al sostener la Resolución Sumaria del Departamento de Asuntos del Consumidor que resuelve que un desarrollador "está impedido de" cobrar las cuotas de mantenimiento durante su administración interina hasta tanto haya traspasado la administración al Consejo de Titulares de un condominio, aún [sic.] cuando se acogió a la alternativa de asumir las cuotas por concepto de mantenimiento hasta que se vendiera el setenta y cinco por ciento (75%) del total de las unidades, de conformidad con el Artículo 36-A de la Ley de Condominios.**

Atendido el recurso, el 15 de mayo de 2009 expedimos el auto de *certiorari* solicitado. Contando con el beneficio de la comparecencia de ambas partes, así como

con el alegato presentado por el DACo, procedemos a resolver.

II

La controversia medular que se nos plantea en el presente caso gira en torno a la facultad de un desarrollador -como administrador interino de un inmueble sujeto al régimen de propiedad horizontal- para cobrar a los titulares la cuota de mantenimiento una vez se alcanza el porciento de unidades vendidas establecido en la escritura matriz del régimen. En particular, debemos precisar el momento en que se activa la obligación de los titulares de pagar las mensualidades para el mantenimiento del edificio: (1) una vez se logra la venta del 51% o del 75% de las unidades que componen el complejo, según lo pactado en la escritura matriz; o (2) tan pronto culmina el proceso de transición de la administración interina del edificio y el desarrollador hace entrega oficial de la misma al Consejo de Titulares. A esos fines, nos corresponde analizar el alcance del Artículo 36-A de la Ley de Condominios, *supra*.

-A-

El régimen de propiedad horizontal fue adoptado en nuestra jurisdicción con un fin dual, a saber, proveerle al ciudadano la posibilidad de disfrutar el derecho a la propiedad plena e individual de un inmueble ubicado en un edificio a la vez que se logra maximizar el uso del

terreno escaso con el que cuenta el país.[6] En el 2003, el esquema jurídico sobre el régimen de horizontalidad en Puerto Rico fue objeto de una revisión extensiva para dotarlo de mayor eficacia en la consecución de su objetivo inicial.[7] El resultado fue la aprobación por parte de la Asamblea Legislativa de la Ley de Condominios, Ley Núm. 103, *supra*; legislación que logra atemperar los intereses de los desarrolladores y de la comunidad financiera a los derechos de los consumidores, aunque estos últimos son considerados con carácter prioritario.[8]

Entre los asuntos que aclara y amplía la Ley de Condominios, *supra*, se encuentran las prerrogativas y obligaciones del desarrollador de un edificio sujeto al régimen de propiedad horizontal -como administrador inicial del inmueble- para con los titulares, en particular respecto a los costos de mantenimiento de las áreas comunes mientras existan apartamentos para la venta. M. J. Godreau, La Nueva Ley de Condominios, San Juan, Editorial Dictum, 2003, pág. 13. Asimismo, la ley detalla el proceso de transición que debe seguirse para el sano traspaso de la administración interina al Consejo de Titulares. Íd.

---

[6] Exposición de Motivos, Ley Núm. 103 de 5 de abril de 2003. Véanse, también: D.A.Co v. Junta Cond. Sandy Hills, 169 D.P.R. 586, 597 (2006); Arce v. Caribbean Home Const. Corp., 108 D.P.R. 225, 242 (1978); M. J. Godreau, La Nueva Ley de Condominios, San Juan, Editorial Dictum, 2003, pág. 11.

[7] Exposición de Motivos, Ley Núm. 103, *supra*.

[8] Íd.

En lo referente al pago de cuotas de mantenimiento, es harto conocido que bajo el régimen de propiedad horizontal los condóminos tienen la obligación de aportar proporcionalmente a los gastos de administración, conservación y reparación de las áreas comunes generales del edificio. Ley de Condominios, *supra*, Artículo 41, 31 L.P.R.A. sec. 1293c. No obstante, la Ley de Condominios, *supra*, contempla en su Artículo 36-A una excepción a este deber legal en aquellos casos en donde el inmueble sujeto al régimen de propiedad horizontal sea de nueva construcción. Ante esas circunstancias, la activación de la obligación de los propietarios para aportar a los gastos de mantenimiento del edificio está condicionada a las responsabilidades que asuma el desarrollador como administrador interino. Veamos.

El Artículo 36-A de la Ley de Condominios, *supra*, le provee al desarrollador dos opciones para la administración interina del inmueble enfocadas en el cobro de las cuotas de mantenimiento. En ese sentido, el desarrollador podrá elegir entre: (1) asumir la totalidad de los gastos de mantenimiento de los elementos comunales hasta que se venda el cincuenta y un por ciento (51%) o el setenta y cinco por ciento (75%), a su discreción; o (2) cobrarle a los titulares de los apartamentos -desde la primera venta- la parte proporcional del mantenimiento de las áreas y facilidades comunales que le corresponda sobre un presupuesto anual. Ley de Condominios, *supra*, Artículo

36-A, inciso (a)(1), 31 L.P.R.A. sec. 1293-1(a)(1). El modelo seleccionado por el desarrollador tendrá que constar en la escritura matriz del régimen y constituirá la pauta a seguir por aquél en la administración del edificio. Íd., Artículos 22 y 36-A, 31 L.P.R.A. secs. 1292 y 1293-1.

Bajo el primer modelo de administración, el desarrollador asume el costo del mantenimiento de las áreas y elementos comunes desde que realiza la primera venta, momento en donde comienza su administración interina. Artículo 36-A(a)(1)(A), 31 L.P.R.A. sec. 1293-1(a)(1)(A). Una lectura aislada de la porción del Artículo 36-A de la Ley de Condominios, *supra*, que regula la referida opción de administración, refleja que la asunción de los costos de mantenimiento por parte del desarrollador subsiste hasta que se venda el porciento de apartamentos estipulado en la escritura matriz. A esos efectos, el inciso (a)(1)(A) del citado artículo dispone que bajo esa opción de administración el desarrollador "asumir[á] la totalidad de los gastos de mantenimiento de las áreas y facilidades comunales **hasta que se venda** el cincuenta y un por ciento (51%) o el setenta y cinco por ciento (75%)" de los apartamentos. (Énfasis suplido.) Íd.

A pesar de lo anterior, cuando estudiamos de forma integral el Artículo 36-A, surgen ciertas incongruencias entre la citada parte del artículo y aquella destinada a la regulación del traspaso de la administración del

edificio al Consejo de Titulares. Por un lado, el estatuto dispone que el deber asumido discrecionalmente por el desarrollador -como parte de su administración interina- de sufragar los gastos de mantenimiento de los elementos comunes del inmueble, subsiste hasta que se enajene el porcentaje de apartamentos determinado en la escritura matriz. Mientras tanto, más adelante en el mismo articulado se indica palmariamente que la administración interina del desarrollador finalizará **una vez haya concluido el proceso de transición y el Consejo de Titulares haya seleccionado a la Junta de Directores.** Artículo 36-A(c) y (d), 31 L.P.R.A. sec. 1293-1(c) y (d).

Ciertamente la redacción del Artículo 36-A, *supra*, induce a confusión. Ello debido a que aparenta segregar el inicio del cobro de las cuotas de mantenimiento del proceso de traspaso de la administración al Consejo de Titulares. No obstante, un estudio ponderado del referido artículo revela que tal dicotomía es ficticia e inexistente.

En principio, debemos recordar que la obligación del desarrollador de sufragar los gastos de mantenimiento de las áreas comunes surge como parte de uno de los dos modelos de administración interina que provee la Ley de Condominios, *supra*. A esos efectos, el Artículo 36-A dispone lo siguiente:

(a) La administración interina comenzará tan pronto se venda el primer apartamento. […]

i) A partir de la primera venta, **el desarrollador tendrá las siguientes opciones para la administración interina:**

1) Asumir la totalidad de los gastos de mantenimiento de las áreas y facilidades comunales hasta que se venda el cincuenta y un por ciento (51%) o el setenta y cinco por ciento (75%), a discreción del desarrollador de los apartamientos.[…]; o

2) Cobrarle a los titulares de los apartamientos vendidos, la parte proporcional del mantenimiento de las áreas y facilidades comunales conforme al porcentaje dispuesto en el Artículo 22, sobre un presupuesto anual que preparará el desarrollador de conformidad con lo que más adelante se establece en el número seis (6) de este inciso. 31 L.P.R.A. sec. 1293-1.

Además, en este análisis debemos considerar que la regulación del procedimiento de traspaso de la administración interina está igualmente subordinada al esquema administrativo que el desarrollador seleccione. En primer lugar, el momento en que procede iniciar la transición de la administración varía entre las alternativas de administración interina provistas en el Artículo 36-A de la Ley de Condominios, *supra*. Cuando el desarrollador opta por asumir los costos de mantenimiento, la transición debe comenzar tan pronto se enajena el porciento de los apartamentos establecido en la escritura matriz del régimen, a saber, el 51% ó 75% de las unidades proyectadas. Artículo 36-A(a)(2), 31 L.P.R.A. sec. 1293-1(a)(2). Mientras tanto, si el desarrollador elige cobrar las cuotas de mantenimiento a partir de la primera venta, el traspaso de la administración procederá tan pronto los condóminos seleccionen a las personas que estarán a cargo

de dicha tarea en una reunión extraordinaria, la cual podrá ser convocada por los titulares en cualquier momento o por el desarrollador una vez se haya individualizado y enajenado el 51% de las unidades disponibles para la venta. Íd., inciso (c)(1 y 2).

En segundo lugar, los requisitos que deben reunir los documentos a ser entregados durante el traspaso, particularmente los libros de cuentas de la administración, también difieren entre ambos sistemas de administración. Si el desarrollador optó por asumir los gastos de mantenimiento, éste tiene la ventaja de poder traspasar la administración interina al Consejo de Titulares sin la presentación de informes auditados sobre su gestión. Godreau, op. cit., pág. 36. Este beneficio dista del escenario de transición bajo la segunda forma de administración, en donde el desarrollador se ve en la obligación de someter informes auditados, entre otros documentos, como parte del proceso de traspaso de administración. Ley de Condominios, *supra*, Artículo 36-A, inciso (c), 31 L.P.R.A. sec. 1293-1(c). Ello es así debido a que el desarrollador comienza a cobrar la cuota de mantenimiento tan pronto vende el primer apartamento. Godreau, op. cit., pág. 36.

Así las cosas, resulta necesario interpretar a fondo las disposiciones del Artículo 36-A de la Ley de Condominios, *supra*, para aclarar el momento preciso en el que nace el deber legal de los condóminos de pagar las

cuotas para el mantenimiento de las áreas comunes del edificio en aquellos casos en donde el desarrollador haya asumido dicha obligación como parte de su administración interina del inmueble.

-B-

A la hora de interpretar estatutos debemos dirigirnos por la norma cardinal en materia de hermenéutica, a saber: "cuando la ley es clara y libre de toda ambigüedad, la letra de ella no debe ser menospreciada bajo el pretexto de cumplir su espíritu". Artículo 14 del Código Civil, 31 L.P.R.A. sec. 14. Dicha pauta, sin embargo, no implica que ante un estatuto claro este Tribunal se encuentre impedido de ejercer su función como intérprete de las leyes. Por el contrario, en múltiples ocasiones hemos expresado que todas las leyes, tanto las oscuras como aquellas más claras, requieren interpretación. Soc. Asist. Leg. v. Ciencias Forenses, 2010 T.S.P.R. 196, 179 D.P.R. ___ (2010); Pueblo v. Zayas Rodríguez, 147 D.P.R. 530, 538 (1999); Vélez v. Srio. de Justicia, 115 D.P.R. 533, 544 (1984).

Cónsono con lo anterior, los tratadistas Bernier y Cuevas Segarra comentan que

> [a]l aplicar una ley siempre es necesario interpretarla. (Citas omitidas.) Eso es así ya sean oscuras o claras las palabras de la ley, por lo que se puede decir que es falso afirmar que sólo las leyes oscuras deben ser interpretadas. R.E. Bernier y J.A. Cuevas Segarra, Aprobación e Interpretación de las Leyes en Puerto Rico, San Juan, Pubs. J.T.S., 1987, pág. 259.

Esto se debe a que el fin último de la hermenéutica legal es descubrir y determinar cuál ha sido la voluntad de la Asamblea Legislativa al aprobar el estatuto examinado. Íd., pág. 241. Así pues, en nuestra faena como intérprete final de las leyes estamos obligados a lograr una exégesis que se ajuste al propósito y a la política pública que inspiró el estatuto. Rodríguez v. Syntex, 160 D.P.R. 364, 382 (2003); Díaz Marín v. Mun. de San Juan, 117 D.P.R. 334, 342 (1986); Esso Standard Oil v. A.P.P.R., 95 D.P.R. 772, 785 (1968).

En consecución con el referido deber, el tribunal debe evitar apegarse "ciegamente" a la letra de la ley en aquellos casos en donde el espíritu y fin del estatuto no queden reflejados en su texto de forma diáfana. Véanse: Soc. Asist. Leg. v. Ciencias Forenses, supra; Alonso García v. S.L.G., 155 D.P.R. 91, 99 (2001). A esos efectos, hemos señalado que "[c]uando el lenguaje de un estatuto no muestra claramente la intención legislativa, es necesario rechazar la interpretación literal, cuando ésta es claramente contraria a la verdadera intención o propósito legislativo". Sucn. Álvarez v. Srio. de Justicia, 150 D.P.R. 252, 274 (2000), citando a Mun. San Juan v. Banco Gub. Fomento, 140 D.P.R. 873, 884 (1996).

El significado literal de un estatuto es aquel que surge de sus palabras considerándolas en su sentido natural y corriente. Bernier y Cuevas Segarra, op. cit.,

pág. 275. Al armonizar esta definición con los principios antes enunciados coincidimos con la glosa en que

> [a]unque generalmente es obligación del juzgador hacer valer la letra de la ley, no debe adoptarse una interpretación literal si la misma es contraria a la intención auténtica y el verdadero propósito del legislador, según esa intención y ese propósito surjan de los propios términos de la ley. Íd., pág. 277.

En esa misma línea, en Pueblo v. Tribunal Superior, 104 D.P.R. 363, 366 (1975), sostuvimos lo siguiente:

> Aun cuando el idioma en su interpretación literal contradiga el propósito de una disposición estatutaria, lo que debe ceder es el idioma y no la realidad que motiva el estatuto. Importa en consecuencia penetrar la superficie verbal del problema ante nos, precisar el diseño y la razón de ser de las disposiciones legales que aquí nos ocupan, sopesar los intereses en juego, para intentar acercarnos a la interpretación más justiciera. Véase, además, Sucn. Álvarez v. Srio. de Justicia, supra, pág. 275.

Como parte del ejercicio requerido para auscultar y descubrir la verdadera intención del legislador, el tribunal debe examinar el estatuto en su totalidad y considerar el contexto bajo el cual fue aprobado. En otras palabras, cada una de sus partes debe ser examinada y comparada las unas con las otras de forma tal que estas sean consistentes entre ellas y que logren el fiel cumplimiento al propósito de la Asamblea Legislativa. Bernier y Cuevas Segarra, op. cit., pág. 315. Bajo este principio de hermenéutica no hay cabida para el análisis aislado de los distintos apartados de la ley. Sindicato de Bomberos Unidos de P.R. v. Cuerpo de Bomberos de Puerto Rico y otros, 2011 T.S.P.R. 12, 180 D.P.R. ___ (2011);

S.L.G. Hernández-Beltrán v. TOLIC, 151 D.P.R. 754, 764-765 (2000). Véase, además, Bernier y Cuevas Segarra, op. cit., pág. 315. "La determinación que un tribunal haga debe asegurar el resultado que el legislador quiso obtener al crear la ley". Mun. de Utuado v. Aireko Const. Corp., 176 D.P.R. 897, 909 (2009); Río Const. Corp. v. Mun. de Carolina, 153 D.P.R. 615, 621 (2001); Chase Manhattan Bank v. Mun. de San Juan, 126 D.P.R. 759, 766 (1990).

El sistema de interpretación estatutaria enfocado en el verdadero cumplimiento de la intención legislativa cobra mayor relevancia cuando nos enfrentamos a una ley cuyo contenido es confuso. En Sucn. Álvarez v. Srio. de Justicia, supra, reafirmamos que

> [a]nte la letra de una ley ambigua o incierta, tenemos la obligación de inclinarnos 'hacia aquella solución que mejor capte el impacto del estatuto en términos del bienestar general y que mejor perciba la intención legislativa al adoptar la norma enfilada a propiciar el interés público...'. (Citas omitidas en el original y énfasis en el original). Íd., pág. 274, citando a Goss v. Dycrex Construction Co., 141 D.P.R. 342, 356-357 (1996).

La voluntad de la Asamblea Legislativa al adoptar el estatuto puede ser indagada a través del historial legislativo de la disposición legal. Pueblo v. Zayas Rodríguez, supra. Primeramente, debemos acudir a la exposición de motivos de la ley, la cual, como regla general, recoge el propósito que inspiró su creación. Íd. Otra fuente que puede arrojar luz sobre la intención del legislador en la aprobación de la ley son las manifestaciones de los miembros del cuerpo durante el

trámite legislativo. Bernier y Cuevas Segarra, op. cit., pág. 242. Esto incluye los datos recogidos en el informe emitido por la comisión legislativa que estudió el proyecto de ley y las expresiones de los legisladores en el hemiciclo durante la sesión de aprobación del estatuto, según recogidas en el Diario de Sesiones. Íd.

En este ejercicio debemos tener presente que la intención legislativa vinculante es aquella esbozada por la mayoría de los legisladores. P.S.P. v. E.L.A., 107 D.P.R. 590, 604-605 (1978). Ello es así dado que es la voluntad de la mayoría de los miembros del cuerpo la que constituye la intención de la Asamblea Legislativa y, por consiguiente, el auténtico significado del estatuto examinado. Bernier y Cuevas Segarra, op. cit., pág. 242.

III

Según indicamos previamente, el Artículo 36-A de la Ley de Condominios, *supra*, resulta confuso al examinarlo en su totalidad. Por una parte, el artículo aparenta limitar la obligación asumida por el desarrollador de sufragar los costos del mantenimiento del edificio -como parte de la administración interina del inmueble- hasta la venta del porcentaje de apartamentos establecido al momento de la constitución del régimen; mientras, por el otro lado, el artículo establece que la administración interina culminará una vez se seleccione la Junta de Directores del Consejo de Titulares. La incongruencia en el estatuto resulta ser patente y real si consideramos que

la asunción de los gastos de mantenimiento por el desarrollador surge como parte de uno de los modelos de administración interina que provee el propio Artículo 36-A.

El peticionario, respecto a este asunto, sostiene en su alegato que la Ley de Condominios, *supra*, es precisa al establecer que la obligación de los titulares de aportar a los costos de mantenimiento se activa tan pronto se vende el porcentaje de unidades seleccionado por el desarrollador en la escritura matriz. Añade que a partir de ese momento y hasta que se transfiera la administración al Consejo de Titulares, el desarrollador, "como administrador interino", tiene la facultad en ley para cobrarle a los titulares las cuotas de mantenimiento correspondientes.[9] Esta argumentación basada en una interpretación literal del primer inciso del Artículo 36-A de la Ley de Condominios, *supra*, no nos convence.

Primeramente, entendemos que dicha exégesis resulta ilógica cuando se evalúa a la luz de la totalidad del Artículo 36-A. En nuestra exposición del derecho señalamos que la asunción por parte del desarrollador de los costos de mantenimiento del edificio acarrea un beneficio al momento del traspaso de la administración al Consejo de Titulares, a saber, la posibilidad de entregar la administración sin la necesidad de someter informes

---

[9] Alegato del Peticionario, pág. 14.

auditados de su gestión.[10] La exención de esta carga se encuentra sustentada en el hecho de que el desarrollador no ha tenido que cobrar cuotas de mantenimiento a los condóminos.[11] Por lo tanto, no ha manejado ni utilizado fondos pertenecientes al Consejo de Titulares sobre los cuales tenga que rendir cuentas específicas respecto a su destino y administración como ocurre con el otro método de administración interina.

Consecuentemente, resolver que el desarrollador sí puede recolectar las referidas cuotas antes de culminar el traspaso de la administración, desencadenaría en la exigencia de tener que entregar informes auditados sobre el período durante el cual recibió y administró dichos fondos. Este efecto definitivamente desvirtuaría uno de los atributos del modelo de administración que provee para que el desarrollador asuma los gastos de mantenimiento.

Por otro lado, también consideramos que la interpretación propuesta por el peticionario se aparta del propósito perseguido por la Asamblea Legislativa en la aprobación de la Ley de Condominios, *supra*. Al examinar la exposición de motivos del estatuto encontramos que uno de los aspectos que se pretendió proteger y atender "prioritariamente" era el derecho de los consumidores.[12] Cónsono con ello, el legislador, en su explicación general

---

[10] Véase Godreau, op. cit., pág. 36.

[11] Íd.

[12] Exposición de Motivos, Ley Núm. 103 de 5 de abril de 2003, 2003 (Parte I) Leyes de Puerto Rico 357-358.

de la citada legislación, hizo referencia a las nuevas normas recogidas en el Artículo 36-A mediante las siguientes expresiones:

> Por otro lado, **para atender más adecuadamente el derecho de los consumidores**, se detallan las obligaciones del desarrollador desde la venta del primer apartamiento hasta el momento de entregar la administración interina del condominio. **El desarrollador tendrá la opción, por un lado, de asumir todos los costos de mantenimiento de las áreas comunes hasta que haga entrega de la administración**, o por el otro, de cobrarle a los titulares la parte proporcional de dichos costos de acuerdo al porcentaje restante por los apartamientos no vendidos o construidos aún. (Énfasis suplido.) Exposición de Motivos, Ley Núm. 103, *supra*, 2003 (Parte I) Leyes de Puerto Rico 357-358.

El texto antes citado coincide con las manifestaciones vertidas por la Comisión de Desarrollo Urbano y Vivienda de la Cámara de Representantes en el informe sometido sobre la propuesta Ley de Condominios.[13] En ese sentido, tanto el mencionado informe como la exposición de motivos del estatuto evidencian de forma patente e inequívoca que la intención del legislador al ofrecer como opción de administración interina la asunción de las cuotas de mantenimiento por parte del desarrollador fue que dicha obligación subsistiera hasta tanto se "[hiciera] entrega de la administración" al Consejo de Titulares. Dicho traspaso, según indicamos previamente, culmina con la elección por los condóminos de la Junta de Directores.

---

[13] Informe de la Comisión de Desarrollo Urbano y Vivienda de la Cámara de Representantes de Puerto Rico sobre P. del S. 1425 de 3 de marzo de 2003, págs. 2-3.

De otra parte, el Artículo 36-A dispone específicamente la forma en la cual debe ser interpretado su contenido. En la misma línea de la antes citada exposición de motivos, el referido artículo establece palmariamente que "este Artículo se interpretará **restrictivamente en protección de los derechos de los titulares**". Ley de Condominios, *supra*, Artículo 36-A, 31 L.P.R.A. sec. 1293-1. Esto implica que en el ejercicio de nuestra facultad interpretativa, la exégesis adoptada debe inclinarse a favorecer a los condóminos en la medida que el contenido del artículo así lo permita.

A tenor con la discusión que antecede, opinamos que el texto literal del Artículo 36-A respecto al modelo de administración interina que provee para la asunción de los gastos de mantenimiento por el desarrollador, debe ceder ante el resto del contenido del artículo y el propósito que lo inspiró. Coincidimos con el DACo en que la venta del porcentaje de apartamentos seleccionado por el desarrollador tiene el único efecto práctico de activar las disposiciones correspondientes al proceso de transición y traspaso de la administración al Consejo de Titulares. **No es sino hasta que se concrete el traspaso de la administración mediante la elección por los titulares de la Junta de Directores que los condóminos vienen obligados a contribuir a los gastos de mantenimiento del edificio.**

Ir más allá de eso y concluir que desde el momento de la enajenación del porciento de unidades establecido en la escritura matriz los titulares están obligados a aportar a los gastos de mantenimiento, constituiría un desfase respecto a los derechos de los consumidores –en este caso los condóminos– debido a que tendrían que pagar por el mantenimiento del inmueble cuando su administración aún está en manos del desarrollador. Bajo ese supuesto fáctico, los titulares quedarían desprovistos de protección en cuanto al manejo por parte del desarrollador de los fondos recolectados por ese concepto durante el período que dure el proceso de transición. Ello es así toda vez que el desarrollador no tiene el deber legal de someter informes auditados de su gestión como administrador interino cuando opta por asumir los costos de mantenimiento del edificio.

**En vista de lo anterior, concluimos que el desarrollador de un inmueble sujeto al régimen de horizontalidad que ha asumido los gastos de mantenimiento durante la administración interina, está impedido de cobrar las cuotas de mantenimiento a los condóminos en la medida en que no haya cesado en sus funciones como tal. Asimismo, resolvemos que la obligación del desarrollador de sufragar los costos de mantenimiento se extingue una vez culmina el proceso de traspaso de la administración del edificio al Consejo de Titulares mediante la elección de la Junta de Directores. De igual forma, es a partir de**

**ese momento en que nace la obligación de los titulares de aportar a los costos de mantenimiento del edificio.**

IV

Pautada la interpretación aplicable al Artículo 36-A de la Ley de Condominios, *supra*, nos resta por resolver si en el presente caso el peticionario incidió al cobrar las cuotas de mantenimiento correspondientes al mes de noviembre de 2005.

En el caso de autos no existe controversia en cuanto al método de administración interina seleccionado por el peticionario. La Escritura Matriz del régimen del Condominio Portal de Sofía refleja que el peticionario – como desarrollador del edificio– optó por asumir los gastos de mantenimiento de las áreas y los elementos comunes hasta que se enajenara el 75% del total de los apartamentos. Dicho porcentaje fue alcanzado el 5 de octubre de 2005, fecha a partir de la cual el peticionario estaba facultado **para iniciar el proceso de traspaso de la administración al Consejo de Titulares.**

Conforme a lo anterior, el peticionario convocó a una asamblea de titulares para el 19 de octubre del mismo año. Se desprende de la Minuta de la asamblea que el Consejo de Titulares se negó a recibir la administración del edificio en ese momento debido a que no se había conformado un comité de transición que recibiera la documentación pertinente a la administración del inmueble. Contrario a lo que alega el peticionario, esta actuación del Consejo

de Titulares no puede operar en su contra e inclinar la balanza a favor del desarrollador en la resolución de este pleito. Esto se debe a que el mismo Artículo 36-A, inciso (e), le confiere expresamente a los titulares la opción de elegir un comité de transición que atienda todo el proceso de traspaso de la administración. 31 L.P.R.A. sec. 1293-1(e).

Así las cosas, al amparo de la norma previamente pautada, el peticionario estaba impedido de recolectar o realizar gestiones conducentes a cobrar a los condóminos las cuotas de mantenimiento durante el proceso de transición. Dicho trámite concluyó el 28 de noviembre de 2005 mediante la elección de la Junta de Directores. No obstante, el peticionario cobró las mensualidades de mantenimiento correspondientes al mes de noviembre de 2005. Evidentemente, erró al así hacerlo.

El peticionario aduce que durante la Asamblea de Titulares celebrada en octubre de 2005 le notificó a los condóminos que a partir del mes siguiente comenzaría a cobrar las cuotas de mantenimiento. Este hecho, por sí solo, no valida su actuación de recolectar las mensualidades a los titulares antes de concretarse el traspaso de administración. La Ley de Condominios, *supra*, no le confiere esa autoridad. Además, la Minuta de la asamblea no refleja que los titulares hayan accedido al referido cobro prematuro.

Más aún, nos percatamos que en la Escritura Matriz del régimen del Condominio Portal de Sofía el peticionario dispuso que su pago por concepto de cuotas de mantenimiento sobre las unidades no vendidas iniciaría "una vez se [hubiese] traspasado la administración del Condominio a la nueva Junta de Directores".[14]     Esta cláusula es patentemente contraria a las acciones del peticionario respecto a los titulares del edificio.

Es pertinente recordar que una vez se traspasa la administración del inmueble al Consejo de Titulares, el desarrollador pasa a ser considerado como un titular más con las mismas obligaciones del resto de los condóminos. Esto incluye el deber de aportar proporcionalmente a los gastos de mantenimiento de las áreas comunes correspondientes a los apartamentos que aún no han sido vendidos.    Bajo esa doctrina vasta conocida, el peticionario indudablemente falló al pretender bifurcar el pago de las cuotas de mantenimiento.    Imponerle a los condóminos el cumplimiento con esa obligación legal en un momento precedente a aquel convenientemente elegido por él en la Escritura Matriz es un acto reprochable que dista del fin público promulgado por la Ley de Condominios, *supra*, y resulta contrario a los principios de buena fe que deben imperar en las relaciones contractuales.

En fin, a tenor con la discusión que precede, concluimos que el peticionario incidió al recolectar de

---

[14] Escritura Núm. 12, *supra*, a la pág. 312.

los titulares las cuotas de mantenimiento correspondientes al mes de noviembre de 2005, toda vez que a esa fecha la administración del edificio aún estaba bajo su control. Reafirmamos que, en virtud del Artículo 36-A de la Ley de Condominios, *supra*, la obligación de los condóminos de aportar a los gastos de mantenimiento y conservación de las áreas comunes se activa una vez haya concluido el traspaso de la administración al Consejo de Titulares mediante la elección de la Junta de Directores. Consecuentemente, en el presente caso procede que el desarrollador le reembolse al Consejo de Titulares las cantidades cobradas a los titulares por concepto de las cuotas de mantenimiento correspondientes al mes de noviembre de 2005.

V

Por los fundamentos antes expuestos, se confirma la Sentencia emitida por el Tribunal de Apelaciones. En cuanto a la restitución del dinero indebidamente cobrado por el peticionario, Portal de Sofía, Inc., acogemos el procedimiento establecido por el DACo en su Resolución. Así, el peticionario deberá reembolsar la cantidad adeudada al Consejo de Titulares del Condominio Portal de Sofía, quienes deberán acreditar a la cuenta de mantenimiento de los titulares concernidos la suma correspondiente a la mensualidad pagada.

Se dictará sentencia de conformidad.

Edgardo Rivera García
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Consejo de Titulares Condominio Portal de Sofía

  Recurrido

   v.

Portal de Sofía, Inc.

  Peticionario

Víctor Suárez Meléndez, en su carácter de Secretario del Departamento de Asuntos del Consumidor

  Agencia Recurrida

Certiorari

CC-2008-1094

SENTENCIA

San Juan, Puerto Rico, a 24 de mayo de 2011.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, confirmamos la Sentencia emitida por el Tribunal de Apelaciones. En cuanto a la restitución a los condóminos del dinero indebidamente cobrado por el peticionario, Portal de Sofía, Inc., éste deberá reembolsar la cantidad adeudada al Consejo de Titulares del Condominio Portal de Sofía, quienes deberán acreditar a la cuenta de mantenimiento de los titulares concernidos la suma correspondiente a la mensualidad pagada.

Así lo pronunció y manda el Tribunal y lo certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez disiente con la siguiente expresión:

  La Juez Asociada señora Rodríguez Rodríguez disiente por considerar que el Tribunal legisla una enmienda a la Ley de Condominios en perjuicio de la metódica estructura legislada por la Asamblea Legislativa. Lo cierto es que el texto de la ley "interpretada" en este caso es claro, y no se justifica

intervenir con las posibilidades que la ley le reconoce a los desarrolladores que someten al régimen de propiedad horizontal sus propiedades. No dudamos que la enmienda judicial a la Ley de Condominios, al alejarse del cuidadoso texto legislado, habrá de perjudicar la maltrecha industria inmobiliaria en el país y conllevará efectos desfavorables no sólo para los desarrolladores sino para los consumidores, a los cuales la mayoría proclama proteger.

La Jueza Asociada señora Pabón Charneco no interviene.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo