| Estado Libre Asociado de Puerto Rico TRIBUNAL DE APELACIONES PANEL ESPECIAL[1] | | |
|---|---|---|
| DESHIA MARIE CARRASQUILLO RAMÍREZ<br><br>Recurrida<br><br>V.<br><br>MAURICE GERARD COLÓN HERNÁNDEZ<br><br>Peticionario | TA2025CE00514 | Apelación procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.: SJ2020RF00888<br><br>Sobre: Alimentos y custodia |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Candelaria Rosa y el Juez Marrero Guerrero.

Marrero Guerrero, Juez Ponente.

## RESOLUCIÓN

En San Juan, Puerto Rico, a 30 de octubre de 2025.

Comparece el Sr. Maurice Colón Hernández (señor Colón Hernández o peticionario) y nos solicita que revisemos una *Resolución* emitida el 31 de julio de 2025 por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI).[2] Mediante el referido dictamen, y en lo pertinente al recurso que nos ocupa, el foro primario declaró No Ha Lugar la *Moción Solicitando Canon de Arrendamiento* presentada por el señor Colón Hernández. En consecuencia, no le impuso un canon de arrendamiento a la Sra. Deshia Carrasquillo Ramírez (señora Carrasquillo Ramírez o recurrida) por ocupar la propiedad privativa del peticionario, declarada hogar seguro para la menor C.S.C.C.

Por los fundamentos que exponemos a continuación, denegamos la expedición del auto de *certiorari*.

---

[1] El recurso fue asignado a este panel por virtud de lo dispuesto en la Orden Administrativa OAJP-2021-086, de 4 de noviembre de 2021, sobre Normas para la Asignación de Recursos Nuevos Previamente Presentados en el Tribunal de Apelaciones. Como consecuencia de la referida orden, este recurso, así como todo recurso futuro que surja del caso de referencia, pendiente ante el Tribunal de Primera Instancia, será atendido por los integrantes de este panel, quienes adjudicaron los correspondientes recursos anteriores. (KLAN202200433, KLCE202200592)

[2] Entrada 359 del caso SJ2020RF00888 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC). Notificada el 31 de julio de 2025.

I.

El asunto ante nuestra consideración tiene su origen el 3 de septiembre de 2020, cuando la Sra. Deshia Carrasquillo Ramírez (señora Carrasquillo Ramírez o recurrida) presentó una *Solicitud de Custodia y Fijación de Pensión Alimentaria*.[3] En la misma, alegó que convivió con el señor Colón Hernández sin estar legalmente casados y, que como parte de su relación procrearon a la menor C.S.C.C. A su vez, manifestó que, la menor se encontraba bajo su custodia y le proveía todas las ayudas necesarias. Por otra parte, adujo que el peticionario tenía ingresos suficientes para contribuir a la manutención de su hija. En virtud de lo anterior, solicitó la custodia de la menor y la fijación de una pensión alimentaria en beneficio de esta. Por su parte, el 28 de enero de 2021, el señor Colón Hernández presentó su *Moción al Expediente Sometiendo PIPE, cálculo de Ingresos y Resto de Evidencia*.[4]

Luego, el 17 de marzo de 2021, el peticionario presentó una *Moción Solicitando Canon de Arrendamiento*.[5] En esta, arguyó que, en el 2010 compró un apartamento ubicado en el Condominio Metro Plaza en San Juan, P.R. y, que en el 2015 lo saldó con sus ahorros. Detalló que, en el 2016 la recurrida se mudó a su apartamento al enterarse que estaba embarazada de la menor C.S.C.C. No obstante, arguyó que, en el 2020, tuvo una discusión con la señora Carrasquillo Ramírez que resultó en la presentación de una orden de protección. En consecuencia, fue removido de su propiedad y vedado de compartir con su hija. Sostuvo que, desde la discusión la recurrida estaba viviendo en su apartamento sin pagar un canon de arrendamiento. Por ello, enfatizó que, si bien era cierto que no había

---

[3] *Íd.*, Entrada 1 de SUMAC.
[4] *Íd.*, Entrada 54 de SUMAC.
[5] *Íd.*, Entrada 75 de SUMAC.

un gasto de hipoteca, no estaba obligado a asumir el 34% del costo de vivienda que le correspondía pagar a la recurrida.

De otra parte, señaló que, la recurrida no tenía derecho legal a vivir en su propiedad, incluso si el Tribunal concedía una solicitud de hogar seguro. Resaltó que, el hogar seguro garantizaba que quien tuviera la custodia podía permanecer en la propiedad como vivienda para el menor, pero no de forma gratuita. Por tanto, razonó que, a la señora Carrasquillo Ramírez le correspondía pagar la mitad del valor de dicho alquiler por la suma de $1,450.00 mensuales. Además, tenía que pagar la suma de $493.00 por el porciento que le correspondía de la "habitación" de la menor en la pensión suplementaria.

En desacuerdo, el 18 de marzo de 2021, la señora Carrasquillo Ramírez presentó su *Réplica a Escritos Titulados "Moción Solicitando Canon de Arrendamiento" y "Moción Solicitando Sanciones y/o Costas Interlocutorias"*.[6] En lo pertinente, adujo que, las disposiciones legales para la concesión del hogar seguro no disponían para el pago de renta por el padre custodio. Ello, pues, esto trastocaría la esencia de dicha figura jurídica. Advirtió que, la imposición de una renta convertía el hogar en uno común donde se satisface el importe de una hipoteca o renta. De igual forma, expresó que la concesión de hogar seguro era para la protección de un menor el cual tenía que estar bajo el cuido de un adulto, por lo que resultaba absurdo imponerle una renta. Finalmente, apuntó que el señor Colón Hernández solicitó la concesión de hogar seguro para la menor, por lo que no podía actuar en contra de sus propios actos.

Así las cosas, tras varios incidentes que resulta innecesario detallar, el 31 de marzo de 2022 el TPI emitió una *Resolución* en la que acogió el informe preparado por la Examinadora de Pensiones

---

[6] *Íd.*, Entrada 77 de SUMAC.

Alimentarias e hizo determinaciones de hecho y conclusiones de derecho.[7] En lo pertinente, impuso al señor Colón Hernández la obligación de satisfacer ciertas cantidades de dinero correspondientes a distintos periodos de tiempo por concepto de pensión alimentaria. Asimismo, dispuso que a partir de febrero de 2022 el pago por la vivienda era de $995.88 mensuales y la pensión regular de $1,052.87 mensuales.

Insatisfechos, ambas partes presentaron ante nos distintos recursos con relación a la aludida *Resolución*. Atendido el recurso, el 30 de junio de 2022 emitimos nuestra *Sentencia*.[8] En ella, determinamos que el padre no custodio podía reclamar que la señora Carrasquillo Ramírez aportara una cantidad razonable en conexión con el uso de la vivienda privativa del señor Colón Hernández, designada hogar seguro de la menor. A su vez, expresamos que la cuantía dependía del alquiler que se determinara razonable, según las realidades del mercado. En ese sentido, le ordenamos al TPI reevaluar la partida del alquiler para que determinara cuánto debía aportar cada parte en concepto de pensión alimentaria en beneficio de la menor. En virtud de lo anterior, denegamos la expedición del auto de *certiorari* en el recurso presentado por el padre no custodio en el caso KLAN202200433.

En cambio, en el recurso KLCE202200592 expedimos el auto de *certiorari*, dejamos sin efecto la determinación de obligar a la señora Carrasquillo Ramírez a pagar la cantidad de $995.58 por concepto de gastos de vivienda y mantenimiento, y devolvimos el asunto ante el TPI para la continuación de los procedimientos. A su vez, mediante *Resolución* de 12 de agosto de 2022 precisamos que al determinar que cuantía, si alguna, debía aportar la señora Carrasquillo Ramírez por concepto de la propiedad objeto de

---

[7] *Íd.*, Entrada 77 de SUMAC. Notificada el 1 de abril de 2022.
[8] *Íd.*, Entrada 219 de SUMAC.

controversia el foro primario debía tomar en consideración su capacidad económica y debía respetar el hecho de que la propiedad era el hogar seguro de esta y de la hija de ambas partes.

Tras varios trámites procesales, y en cumplimiento con la determinación de este tribunal apelativo, el 13 de febrero de 2023, el TPI emitió una *Resolución y Orden* mediante la cual les ordenó a las partes proveer el nombre de un perito en la materia de alquileres y bienes raíces para que el Tribunal pudiera fijar la cuantía correspondiente al uso de la propiedad por parte de la señora Carrasquillo Ramírez.[9] Entonces, el 10 de junio de 2023, el señor Colón Hernández presentó una *Urgente Moción Sometiendo Información* en la cual ofreció la información de una candidata de perito de bienes raíces para la consideración del TPI.[10] Así las cosas, el 12 de julio de 2023, el foro primario emitió una *Resolución* mediante la cual ordenó a la Examinadora de Pensiones Alimentarias tomar en consideración la información suministrada por la Sra. Alexandra Lugo Torres, y a su vez, determinar el valor a fijarse por concepto de uso de la propiedad objeto de controversia.[11]

Inconforme, la recurrida presentó un recurso de *Certiorari* e impugnó la *Resolución* emitida el 12 de julio de 2023. Atendido el recurso, el 26 de octubre de 2023, emitimos una *Resolución* en la cual denegamos la expedición de este.[12] En síntesis, resolvimos que, la Examinadora de Pensiones Alimentarias no había emitido una recomendación sobre la cuantía que debía aportar la madre de la menor por la vivienda designada como hogar seguro. Como consecuencia de ello, el TPI tampoco alcanzó una determinación sobre la porción, si alguna, que le correspondería pagar a la madre de la menor. Por lo tanto, entendíamos que la etapa del

---

[9] *Íd.*, Entrada 237 de SUMAC.
[10] *Íd.*, Entrada 253 de SUMAC.
[11] *Íd.*, Entrada 268 de SUMAC.
[12] *Íd.*, Entrada 299 de SUMAC.

procedimiento en que se presentó el caso no era la más propicia para su consideración. Además, indicamos lo siguiente:

> Ahora bien, reiteramos que el TPI deberá tomar en consideración la capacidad económica de la señora Carrasquillo y respetar el hecho de que la propiedad es el hogar seguro de la menor procreada entre las partes. Cónsono con lo anterior, creemos pertinente enfatizar que si bien nos abstenemos de intervenir en este momento por las razones ya indicadas, el foro primario debe velar porque el resultado que alcance en su día no represente soslayar o menoscabar la política pública perseguida con el reconocimiento de la figura del hogar seguro en nuestra jurisdicción.

Tras varias incidencias procesales las cuales no son necesarias pormenorizar, el 21 de marzo de 2025, el señor Colón Hernández presentó su *Informativa Sobre Cierre del Loss Mitigation*.[13] De igual forma, el 21 y 25 de marzo de 2025, presentó su *Moción Para Informar Cierre del Caso y Anejar Sentencia*. En esencia, informó al TPI que el proceso de *loss mitigation* en el que se encontraba la propiedad declarada hogar seguro había concluido. Añadió que el pago mensual de la hipoteca terminó en $1,552.00 y, que se habían realizado dos (2) pagos.

Luego de examinar los planteamientos de las partes, el 31 de julio de 2025, el TPI emitió la *Resolución* recurrida declarando No Ha Lugar la *Moción Solicitando Imposición de Canon de Arrendamiento* presentada por el peticionario el 17 de marzo de 2021.[14] Ello, por ir en contra de la política pública de la figura de hogar seguro. En lo pertinente, resolvió que, la propiedad privativa del señor Colón Hernández, más allá de ser parte de su obligación de suplir habitación a la menor, también suplía la necesidad sentimental de continuar ocupando la vivienda familiar y continuar en su entorno social y afectivo. De otra parte, enfatizó que, no había un contrato entre las partes y, que las únicas dos razones por las que la recurrida y su hija estaban en el inmueble del peticionario

---

[13] *Íd.*, Entrada 338 de SUMAC.
[14] *Íd.*, Entrada 359 de SUMAC. Notificada el 31 de julio de 2025.

era por la orden de protección ex parte y, posteriormente, por la declaración judicial de hogar seguro y custodia.[15]

De otra parte, aclaró que del expediente surgieron acciones por el peticionario ejerciendo presión económica dirigidas a que la señora Carrasquillo Ramírez abandonara el inmueble o, en la alternativa, imponer un canon de arrendamiento. Específicamente, el Tribunal expresó que el peticionario intentó vender el apartamento. Además, advirtió a la recurrida que cancelaría las cuentas de agua potable y energía eléctrica, incluyendo el mantenimiento con el propósito de dejarlas desprovistas de los servicios básicos. Por último, apuntó que el peticionario constituyó una hipoteca sobre la propiedad, utilizando el producto de dicho financiamiento para adquirir un bien de disfrute, un bote. Resaltó que, posterior a ello, dejó de pagar la hipoteca, lo que conllevó un procedimiento de ejecución de hipoteca que puso en riesgo la vivienda de la menor. Sostuvo que, dichos actos eran contrarios a la protección que ofrecía la figura del hogar seguro y constituían un medio de presión económica contra la recurrida.

Cónsono con lo anterior, concluyó que, permitir la imposición de un canon de arrendamiento convertía al señor Colón Hernández en acreedor y arrendador, lo cual permitía acceso a remedios en ley ante el incumplimiento de pago de la señora Carrasquillo Ramírez. Sostuvo que dicho proceder desvirtuaba y trastocaba la esencia de la figura de hogar seguro, toda vez que esta proveía protección contra acreedores. Entiéndase que, la consecuencia jurídica de convertir al padre no custodio en arrendador de la madre custodia era convertirlo en un acreedor del cual nuestro ordenamiento jurídico pretendía proteger. Por tanto, coligió que en la figura de

---

[15] Véase caso núm. SJ2020CV04770, el 10 de mayo de 2021 el TPI emitió una *Sentencia* declarando el apartamento 107 ubicado en el Condominio Metro Plaza Towers, en Santurce el hogar seguro para la menor de edad hija de las partes. Notificada el 12 de mayo de 2021.

hogar seguro no podía coexistir con una relación de arrendador y arrendatario entre progenitores como en el caso de epígrafe. Enfatizó que, el cobro de renta exponía a la menor al riesgo de desalojos, interrupciones en su tratamiento, cambio de escuelas, pérdidas de vínculos comunitarios y otras alteraciones adversas para su desarrollo. Así pues, razonó que, el interés propietario del peticionario tenía que tomar un segundo plano frente a lo que era el mejor bienestar de su hija.

Por todo lo anterior, determinó que la imposición del canon de renta a la señora Carrasquillo Ramírez, no solo desvirtuaba la figura de hogar seguro y de alimentos en protección a la hija de ambos, sino que creaba un ciclo económico artificial que impactaba negativamente la unidad familiar y que el estado tenía un interés apremiante en proteger.

Finalmente, coligió que, si el señor Colón Hernández estaba cumpliendo con su deber de proveer habitación a su hija mediante el uso del inmueble privativo como residencia de la menor, pretender cobrar una renta por dicho uso, equivalía a condicionar el cumplimiento de su obligación alimentaria con su patrimonio al pago de un canon por parte de la madre custodia. Ello resultaría en que el peticionario no estaría cumpliendo su deber de manera libre y efectiva, sino alquilando el inmueble a la madre a cambio de cumplimiento de su obligación de habitación hacia su hija, lo cual resultaba incompatible con la naturaleza del deber alimentario. Finalmente, reiteró que, la residencia de la señora Carrasquillo Ramírez en el inmueble del peticionario correspondía al cumplimiento de su rol custodio, bajo una orden judicial de hogar seguro que protegía a su hija menor, por lo que imponer un canon de arrendamiento en dichas circunstancias colocaba una carga desproporcionada sobre la madre custodia, afectando su estabilidad y, por ende, el bienestar de la menor.

Inconforme, el 15 de agosto de 2025, el señor Colón Hernández presentó su *Solicitud de Reconsideración* en la cual reiteró sus planteamientos de la moción solicitando canon de arrendamiento.[16] Además, alegó que las cantidades pagadas en la pensión debían ser ajustadas, puesto que la recurrida no incurría en un gasto de vivienda. Particularmente, detalló que la Examinadora de Pensiones Alimentarias estableció un pago de $995.00 por renta o hipoteca y, que de dicha cantidad se le impuso un pago de $339.68 al padre no custodio como partida de vivienda. No obstante, resaltó que, pagaba la totalidad del pago de hipoteca, mientras que la madre de la menor no aportaba nada. Apuntó que, pagaba $116.51 de mantenimiento y $223.17 mensuales para una hipoteca que no existía, por lo que esto creaba un crédito a su favor de $9,372.51. Es decir, pagaba la totalidad de la hipoteca y, además, se le impuso una partida para vivienda, lo que provocaba que pagara en exceso de lo que le correspondía. Añadió que, la *Sentencia* emitida por este Tribunal de Apelaciones devolvió el caso al foro primario para determinar cuánto tenía que pagar la recurrida por vivir en su residencia. Por tanto, razonó que la *Resolución* emitida por el TPI incumplía con la orden de este tribunal apelativo.

Atendida la moción de reconsideración el 28 de agosto de 2025, el TPI la declaró No Ha Lugar y ordenó la continuación de los procedimientos.[17] En su *Resolución*, el TPI reiteró que imponer una renta a la recurrida implicaba que el señor Colón Hernández no estaría cumpliendo su deber de proveer habitación a su hija de manera libre y efectiva, sino alquilando el inmueble a la madre, lo cual resultaba incompatible con la naturaleza del deber alimentario. De igual forma, concluyó que lo expuesto en la *Resolución* era consistente con lo ordenado por el Tribunal de Apelaciones, toda vez

---

[16] *Íd.*, Entrada 363 de SUMAC.
[17] *Íd.*, Entrada 368 de SUMAC.

que allí se instruyó a este foro a evaluar si procedía la imposición de un canon de renta y velar que el resultado no soslayara o menoscabara la política pública de la figura del hogar seguro.

Respecto al reembolso de los $9,000.00 por el pago de la mensualidad de la hipoteca, el TPI indicó que esta parte de la moción no cumplía con el criterio de fundarse en cuestiones sustanciales relacionadas con las determinaciones de hechos o conclusiones de derecho. Esto, debido a que el dictamen cuya reconsideración se solicitó no atendía ningún reclamo relacionado a un crédito de $9,000. Finalmente, resolvió que la moción de reconsideración no proveía fundamento legal que demostrara que un canon de arrendamiento era compatible con la figura de hogar seguro. Es decir, que la moción de reconsideración presentada por el señor Colón Hernández debió exponer con suficiente especificidad los hechos y el derecho que debían reconsiderarse.

Inconforme aun, el 9 de septiembre de 2025, el señor Colón Hernández presentó el recurso que nos ocupa, en el que señaló que el TPI cometió los siguientes errores:

> PRIMER ERROR: ERRÓ EL TPI AL DENEGAR LA IMPOSICIÓN DE UN CANON DE ARRENDAMIENTO SOBRE EL INMUEBLE DECLARADO HOGAR SEGURO PARA LA MENOR, A PESAR DE QUE EL TRIBUNAL DE APELACIONES YA HABÍA ORDENADO LA IMPOSICIÓN DE UN CANON DE RENTA RAZONABLE A LA SRA. CARRASQUILLO.
>
> SEGUNDO ERROR: ERRÓ EL TPI AL DENEGAR LA IMPOSICIÓN DE UN CANON DE ARRENDAMIENTO SOBRE EL INMUEBLE PRIVATIVO DEL SR. COLÓN, EL CUAL ES HABITADO GRATUITAMENTE POR LA SRA. CARRASQUILLO.
>
> TERCER ERROR: ERRÓ EL TPI AL NO CONSIDERAR QUE LA SRA. CARRASQUILLO NO REALIZA APORTACIÓN ALGUNA POR CONCEPTO DE VIVIENDA, A PESAR DE QUE EL USO DEL INMUEBLE CONSTITUYE UN BENEFICIO ECONÓMICO TANGIBLE PARA ELLA.
>
> CUARTO ERROR: ERRÓ EL TPI AL CONCLUIR QUE LA IMPOSICIÓN DE UN CANON DE ARRENDAMIENTO PONDRÍA EN RIESGO EL BIENESTAR DE LA MENOR, AL EQUIPARAR DICHA IMPOSICIÓN CON UNA

RELACIÓN CONTRACTUAL DE ARRENDAMIENTO SUJETA A DESAHUCIO.

En esencia, el peticionario subrayó que asumió la totalidad de los gastos de vivienda como parte del hogar seguro. Sin embargo, afirmó que no existía base jurídica alguna que lo obligara a sufragar los gastos de vivienda de la recurrida, pues ello constituía una carga económica indebida y contraria a derecho. Finalmente, expuso que el canon solicitado no tenía como finalidad alterar el hogar seguro de la menor, ni poner en riesgo su estabilidad. Por el contrario, lo que perseguía era una distribución justa y equitativa de las cargas económicas derivadas del uso de la vivienda.

Por su parte, la señora Carrasquillo Ramírez esbozó que según la prueba desfilada su ingreso era de $2,531.00 mensuales y, que con dicha suma de dinero pagaba el mantenimiento de la propiedad, las utilidades y las obligaciones médicas de la menor. Sostuvo que no existía una disposición legal a los fines de imponer una aportación económica a la persona que le fue adjudicado el hogar seguro. De igual forma, planteó que al momento de adjudicar la propiedad como hogar seguro no estaba gravada y, fue el peticionario quien gravó la propiedad para comprarse un bote, por lo que no procedía premiar a este imponiéndole un canon de arrendamiento a la madre custodia. Finalmente, argumentó que, este tribunal apelativo no ordenó la imposición de una cuantía por concepto de renta, sino evaluar y determinar sobre la porción, si alguna, que le correspondería a la madre custodia. Ello utilizando el principio de equidad. En la alternativa, expresó que, si el Tribunal determinaba que procedía la imponer una cuantía relacionada al mercado de rentas, este sería mucho mayor que la cuantía porcentual correspondiente al pago de la hipoteca.

Con el beneficio de la comparecencia de la parte recurrida, resolvemos.

## II.

## A. *Certiorari*

El *certiorari* es un vehículo procesal extraordinario que permite que un tribunal de mayor jerarquía revise decisiones de un foro inferior. *Rivera et al., v. Arcos Dorados et al.,* 212 DPR 194, 207 (2023); *McNeill Healthcare LLC v. Municipio De Las Piedras*, 206 DPR 391, 404 (2021); *Medina Nazario v. McNeill Healthcare LLC*, 194 DPR 723, 728 (2016); *IG Builders et al. v. BBVAPR*, 185 DPR 307, 337-338 (2012). La expedición del auto es discrecional, por tratarse ordinariamente de asuntos interlocutorios. *Íd.*

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, limita taxativamente las instancias en que procede expedir el auto de *certiorari* en asuntos interlocutorios civiles. *McNeill Healthcare LLC v. Municipio De Las Piedras, supra; Scotiabank de Puerto Rico v. ZAF Corporation, et als.*, 202 DPR 478 (2019). Así, solo procede revisar resoluciones u órdenes bajo las Reglas 56 y 57 de Procedimiento Civil, *supra*, o la denegación de mociones dispositivas. Como excepción, se pueden revisar asuntos sobre la admisibilidad de testigos de hechos o peritos esenciales, privilegios evidenciarios, rebeldía, relaciones de familia, interés público u otra situación en la que esperar a la apelación constituiría un fracaso irremediable de la justicia. *Íd.*

Si el asunto interlocutorio no se encuentra dentro de estas instancias, el Tribunal carece de autoridad para intervenir. Su propósito es evitar la dilación que implicaría la revisión inmediata de controversias que pueden atenderse en un recurso de apelación. *Scotiabank de Puerto Rico v. ZAF Corporation, et als., supra,* pág. 486.

Por otro lado, la Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, 215 DPR __ (2025), R. 40, establece los criterios que orientan el ejercicio de nuestra facultad discrecional para atender una petición de *certiorari*. A saber, este Tribunal debe evaluar:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Cuando se deniega la expedición del auto de *certiorari*, no es necesario exponer las razones de dicha determinación. *IG Builders et al. v. BBVAPR*, *supra*, pág. 336. En tal caso, esta Tribunal no asume jurisdicción sobre el asunto ni lo resuelve en sus méritos. *McNeill Healthcare LLC v. Municipio De Las Piedras*, *supra*, pág. 405.

### B. Hogar Seguro

El fin principal de la legislación de hogar seguro fue hacerle justicia a la institución de la familia. *Candelario Vargas v. Muñiz Díaz*, 171 D.P.R 530 (2007). Por ello, con el hogar seguro se reconoce que no hay por qué disgregar a los hijos del entorno que han conocido desde siempre. *Candelario Vargas v. Muñiz Díaz,* supra, pág. 544. Cónsono con lo anterior, el Tribunal Supremo ha establecido que el bienestar de los hijos es un interés de mayor jerarquía que cualquier interés propietario que puedan tener los padres. *Candelario Vargas v. Muñiz Díaz*, supra, pág. 544. Tomando en cuenta la equidad y la política pública que procura el beneficio del menor, dicho Tribunal ha interpretado que el derecho a hogar seguro se extiende a la vivienda familiar habitual cuando ésta constituye un bien privativo del padre no custodio. *Candelario Vargas v. Muñiz Díaz, supra,* pág. 544. De ahí que "al adjudicar

controversias relacionadas con menores los tribunales deben guiarse por el principio de asegurar el bienestar y los mejores intereses de éstos. ... [L]os derechos de los padres pueden limitarse en aras de proteger un interés apremiante del Estado, como lo es bienestar de los menores." *Candelario Vargas v. Muñiz Díaz, supra,* pág. 547.

Además, es meritorio destacar que el derecho a hogar seguro tiene una íntima conexión con el derecho de alimento de los padres a los hijos." *Candelario Vargas v. Muñiz Díaz,* supra, pág. 545. Pues, como sabemos, corresponde a los padres el deber de alimentar a los hijos y entre los alimentos debe comprenderse la habitación. A su vez, la fijación de la pensión alimentaria está regulada por legislación especial de eminente interés público. *Fonseca Zayas v. Rodríguez Meléndez,* 180 DPR 623 (2011). Con el propósito de fortalecer los sistemas y agilizar los procedimientos administrativos y judiciales para la determinación, recaudación y distribución de las pensiones alimentarias, la Asamblea Legislativa promulgó la Ley Orgánica de la Administración para el Sustento de Menores, *supra.* Subsiguientemente, se ha requerido que la fijación de la pensión sea realizada conforme a las disposiciones de las Guías Mandatorias para computar las pensiones alimentarias en Puerto Rico, Reglamento Núm. 8529, Departamento de Estado, 30 de octubre de 2014. Al referirse a la citada Ley de ASUME, nuestro Tribunal Supremo ha establecido que la Asamblea Legislativa estableció una política pública de interpretación liberal de la Ley a favor de los mejores intereses del menor o alimentista que necesita alimentos.

Ahora bien, los progenitores tienen un deber de suplir las necesidades físicas e intelectuales de sus hijos, por el fundamento medular que surge de la relación paternofilial. *Argüello v. Argüello,* 155 DPR 62, 70-71 (2001). Es, por tanto, dicha obligación, un deber

moral y jurídico de rango constitucional mediante el cual se preserva el bienestar de los hijos menores. *Montes Díaz v. Montes James,* 2024 TSPR 27. Tan es así, que los progenitores legalmente establecidos como tales, tengan o no la patria potestad o vivan o no en compañía de sus hijos menores, están obligados a velar por éstos y a proveerles alimento." *Chévere v. Levis,* 150 DPR 525, 539 (2000).

Además, la cuantía de los alimentos es proporcionada a los recursos de la persona alimentante y a las necesidades de la persona alimentista, por lo cual se "reducirán o aumentarán en proporción a los recursos del primero y a las necesidades del segundo". 31 LPRA sec. 7567; *Pesquera Fuentes v. Colón Molina,* 202 DPR 93, 108 (2019). Ante ello, es importante que, durante el proceso evaluativo para la determinación de la pensión alimentaria, se ausculte la capacidad económica del padre o la madre no custodio, como la del padre o de la madre custodio, toda vez que ambos están obligados a prestar alimentos de forma proporcional a sus recursos. *Llorens Becerra v. Mora Monteserín,* 178 DPR 1003, 1018 (2010).

Cónsono con lo anterior, el Artículo II, Sección 9, de la Carta de Derechos de la Constitución del Estado Libre Asociado de Puerto Rico reconoce el derecho de propiedad de las personas al disponer expresamente que nadie podrá ser privado de su propiedad sin una justa compensación. El Tribunal Supremo ha indicado que el derecho al disfrute de la propiedad junto al derecho a la vida y a la libertad, es uno de los cimientos de la convivencia social democrática. *Culebra Enterprises Corp. v. E.L.A.,* 127 DPR 943 (1991). Sin embargo, a pesar de su carácter fundamental, el derecho al disfrute de la propiedad no es un derecho absoluto. La Asamblea Legislativa puede establecer limitaciones a ese derecho siempre y cuando se haga en beneficio del bienestar general. *Vélez v. Srio. de Justicia,* 115 DPR 533 (1984); *E.L.A. v. Márquez,* 93 DPR 393 (1966). El Estado posee la facultad para disponer de propiedad privada para

fines públicos ya sea mediante la expropiación o cuando ocurre una incautación o "taking" que afecta sustancialmente el uso de la propiedad. *Velázquez v. Velázquez,* 135 DPR 84 (1994). Se ha expresado que ha expresado que existen dos tipos de acción gubernamental que constituyen "taking" per se. Una de ellas ocurre cuando la acción gubernamental le niega al propietario todos los usos económicamente beneficiosos de la propiedad. La otra surge cuando hay una ocupación física de la propiedad por parte del estado. Esta última regla aplica también a acciones gubernamentales que permiten a otras personas, que no son el propietario, a tener la ocupación física indefinida de la propiedad. Véase, *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 US 419 (1982); Ronald D. Rotunda and John Nowak, *Treatise on Constitutional Law: Substance and Procedure*, West Group, 3rd. ed., 1999, págs. 717-718; Nowak & Rotunda, Constitutional Law, West Publishing Co., 4th. ed., 1991, a la pág. 431.

III.

El señor Colón Hernández alegó que el TPI erró al denegar la imposición de un canon de arrendamiento sobre el inmueble declarado hogar seguro para la menor, a pesar de que la señora Carrasquillo Ramírez vivía en su propiedad gratuitamente y, este Tribunal de Apelaciones había ordenado la imposición de un canon de arrendamiento razonable. A su vez, planteó que el TPI incidió al no considerar que la recurrida no realizaba aportación alguna por concepto de vivienda, a pesar de que el uso del inmueble constituía un beneficio económico tangible para esta. Por último, argumentó que el foro primario erró al concluir que la imposición de un canon de arrendamiento pondría en riesgo el bienestar de la menor, al equiparar dicha imposición con una relación contractual de arrendamiento sujeta a desahucio.

Evaluado cuidadosamente el expediente del caso y la *Resolución* recurrida, a la luz de los criterios de la Regla 52.1 de Procedimiento Civil, *supra*, R. 52.1, y de la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, R. 40, declinamos la invitación del señor Colón Hernández a intervenir con lo actuado por el TPI. Considerada la naturaleza del reclamo la determinación recurrida no resulta irrazonable, contraria a derecho ni constituye un fracaso a la justicia.

En primer lugar, nos parece meritorio precisar que, desde el 2021 el apartamento 107 ubicado en el Condominio Metro Plaza Towers es el hogar seguro de la menor de edad hija de las partes. Ello con el propósito de suplir habitación a la hija de las partes y permitirle permanecer residiendo en la que ha sido vivienda familiar. De igual forma, surge que al momento de la designación del hogar seguro la propiedad estaba salda. No obstante, el peticionario hipotecó nuevamente la propiedad con el propósito de comprar una embarcación para uso personal, con lo que surgió una obligación que indirectamente tiene el resultado de requerirle a la señora Carrasquillo Ramírez a pagar renta por ocupar la propiedad. Dicho proceder está en contra de la figura del hogar seguro, puesto que imponer un canon de arrendamiento convertiría al peticionario en acreedor de la recurrida. Mientras que la figura de hogar seguro provee protección contra acreedores.

Por otra parte, aclaramos que este tribunal apelativo no ordenó al TPI a imponer una cuantía por concepto de renta, sino ordenamos a determinar que cuantía, si alguna, debía aportar la señora Carrasquillo Ramírez por concepto de la propiedad objeto de controversia, por lo que el foro primario debía tomar en consideración su capacidad económica y debía respetar el hecho de que la propiedad era el hogar seguro de esta y de la hija de ambas partes. En cumplimiento con lo anterior, el foro primario realizó el

análisis correspondiente y no le impuso una cuantía por concepto de arrendamiento. Así pues, reiteramos que en el caso ante nuestra consideración no existe razón alguna en derecho para obligar a la señora Carrasquillo Ramírez a aportar al pago de la propiedad declarada hogar seguro para la menor.

IV.

Por los fundamentos que anteceden, se deniega la expedición del auto de *certiorari* solicitado.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones